# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL ENERGY, INC.,

        Plaintiff,

v.

UNITED STATES OF AMERICA and
UNITED STATES CUSTOMS AND
BORDER PROTECTION,

        Defendants.

Case No.: 25-00230

Hon._____

## **COMPLAINT**

## **EXHIBIT A1**

### **CBP Notice of Detention for Entry No. 90604963689**

# EXHIBIT A1



DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

No. 1756727940368

# DETENTION NOTICE AND CUSTODY RECEIPT FOR DETAINED PROPERTY
Handbook 5200-09

**1. Held for other agency?** ☐ Yes ☑ No   **Name of Agency:**

**2. Certified Mail Number:**

**3. Investigative Case Number:**

**4. General Order Number:**

**5. Exodus Command Center Notified?** ☐ Yes ☑ No   Date: _____ Time: _____

**6. Port Code:** 1704

**7. Date of Detention:** 09/01/2025

**8. Time (Use 24 Hours):** 07:59:00

**9. Entry Number:** 90604963689

**11. Seal or Other ID Number:**

**10. Detained from:**
Name: CAMEL ENERGY INC
Address:
4355 Varsity Dr
ANN ARBOR, MI 48108-5004, US
Telephone Number:

**12. Misc. Numbers:**

**13. Remarks:** THE UYGHUR FORCED LABOR PROTECTION ACT (UFLPA) Line 1

**14. FPF Number (For CBP Lab Use Only):**

**15. Point of Contact Information - Send all correspondence to:**
Savannah Trade Team savtrade@cbp.dhs.gov
Telephone Number:   Fax Number:
912-721-4840

**16. Additional Information/Action Request from Importer/Exporter/Subject:**

**16a. Reason for Detention:**
Subject to the Uyghur Forced Labor Prevention Act (UFLPA) and is detained pursuant to 19 USC 1499(c)

**16b.** ☐ Suspected counterfeit marks: Per 19 CFR 133.21, disclosure may be made to the mark owner unless information is provided within 7 business days establishing that the suspect mark is genuine.

**17. Tests or Inquiries to be Conducted:**

**18. PROPERTY** (By Line Item) Attach CBP 58 if conveyance

| 18a. Line Item No. | 18b. Description | 18c. Packages Number | Type | 18d. Measurement Qty. | UM | 18e. Est. Dom. Value | 18f. Samples Sent to the CBP Lab Yes or No | Date |
|---|---|---|---|---|---|---|---|---|
| 1 | LEAD-ACID BATTERY - PASSENGER | 10 | PKG | | | $ 343840 | ☐ Y ☑ N | |
| | | | | | | $ | ☐ Y ☐ N | |
| | | | | | | $ | ☐ Y ☐ N | |
| | | | | | | $ | ☐ Y ☐ N | |

**19. Detaining Officer Name:**
Andrew Barrett (Print)   Andrew Barrett (Signature)   09/01/2025 (Date)

**20. ACCEPTANCE/CHAIN OF CUSTODY**

| 20a. Line Item No. | 20b. Description | 20c. Print Name/Title/Organization | 20d. Signature | 20e. Date |
|---|---|---|---|---|
| | | | | |

Shipments may be detained for up to 30 days, unless statutory authority or interagency agreement mandates that a longer period of time is required, or the importer/exporter/subject requests a longer detention period through the Port Director.

CBP Form 6051D (2/23)   CBP 6051A Continuation Sheet Attached? ☐ Yes ☑ No   Page 1 of 2

## Detention Notice and Custody Receipt for Detained Property
## INSTRUCTIONS
(Fill in all sections that apply)

| | |
|---|---|
| 1. Held for other agency | Enter an "X" in the appropriate box to indicate yes or no. If yes, provide agency name. |
| 2. Certified Mail No. | Enter number from Post Office receipt. |
| 3. Investigative Case No. | Enter OI Investigative Case Number or IA File Number Only. |
| 4. General Order No. | Enter the 15 digit General Order Number. |
| 5. Exodus Command Center | Enter an "X" on the appropriate box to indicate yes or no. If yes, provide date and time. (Export detentions only) |
| 6. Port Code | Enter the Port Code. |
| 7. Date of Detention | Enter date of detention in month/day/year. |
| 8. Time | Enter time of incident in 24-hour format (e.g. 1600). |
| 9. Entry No. | Enter the Entry Number. |
| 10. Detained from | Enter the name, address and telephone number of the person whose property has been detained. |
| 11. Seal or Other ID No. | Enter Baggage Claim Number, Evidence Bag Number, CBP seal, or any other identification attached to the property. |
| 12. Misc. Nos. | Enter other agency case number, for example. |
| 13. Remarks | Enter any remarks which may be relevant or which may be of assistance in storing or maintaining the property. Reference any previous CBP6051D number. |
| 14. FPF No. | Enter the FPF Number. (**For CBP Lab Use Only**) |
| 15. Point of Contact Information | Enter the local CBP office, SAIC, Port, or FPF address and telephone number, as appropriate. |
| 16. Additional Information | Enter the information and/or action request from party-in-interest |
| 16a. Reason for Detention | Enter explanation of why the item(s) is/are being detained. |
| 16b. Suspected Counterfeit Marks | If the "suspected counterfeit mark" box is checked, include a description of mark(s) at issue, identified by recordation number, brand name, and/or owner of protected mark(s) in the "Reason for Detention" field. |
| 17. Tests or inquires to be Conducted | Enter the process being conducted to determine if item(s) is/are in violation. |
| 18. **Property** | Enter line-item information. |
| 18a. Line Item No. | Enter group items by tariff number or SEACATS category code. Line item number corresponds to the line item number in SEACATS. |
| 18b. Description | Enter brief description of detained item. |
| 18c. Packages | Enter the number and type of packaging containing the property. (e.g. BX=box, BA=bale, EN=envelope) |
| 18d. Measurement | The block contains the quantity of the detained item given in the units of measure entered in the Unit of Measurement block. For NARCOTICS, the net weight is entered. |
| 18e. Estimated Domestic Value | Enter the estimated domestic value of the item seized. |
| 18f. Samples Sent to Lab | Enter an "X" in the box to determine if a sample was sent to the CBP Lab and list the date sent. |
| 19. Detaining Officer Name | Enter printed name of detaining officer, sign and date (first officer taking custody of the property). This initiates the Chain of Custody for all items described in Block 19. Signature is for **ALL** line items, including any CBP 6051A continuation sheet(s). |
| 20. **Acceptance/Chain of Custody** | |
| 20a. Line Item No. | Enter the line-item number(s) from "Property" section. (e.g. 1,2,3 and 5; or 1-3, 5) |
| 20b. Description | Enter item(s) being accepted. The word "ALL" or equivalent is **NOT** acceptable. |
| 20c. Print Name | Enter the name/title/organization of the individual accepting custody of item(s). |
| 20d. Signature | Have individual accepting custody of item(s) sign in this block. |
| 20e. Date | Enter date custody is accepted. |

CUSTOMS AND BORDER PROTECTION
UFLPA Attachment to the Notice of Detention

**Detention Number**: 1756727940368
**Port Code**: 1704                                          **Port Name**: Atlanta Intl Airport (AT - 1704
**Date of Detention**: 09/01/2025
**Entry Number**: 90604963689                        **Line Number**: 1
**Broker/Importer**: CAMEL ENERGY INC
**Description of Merchandise**: LEAD-ACID BATTERY - PASSENGER

**Reason for Detention:**
This immediate shipment has been identified as potentially being manufactured in the Xinjiang Uyghur Autonomous Region (Xinjiang) of the People's Republic of China (PRC), or by entities identified by the U.S. government on a Uyghur Forced Labor Prevention Act (UFLPA) entities list, or with inputs from the Xinjiang.

As such, this merchandise may be subject to the UFLPA, (Pub. L. 117-78), (22 U.S.C. Section 6901), and Section 307 of the Tariff Act of 1930, 19 U.S.C. Section 1307, and is detained in accordance with 19 U.S.C Section1499(c).  If during the period of detention CBP ultimately determines the merchandise is subject to the UFLPA, the merchandise will be prohibited from entering the United States, as it will be presumed to have been produced, wholly or in part, using forced labor. The UFLPA creates a presumption that imports of all goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in the Xinjiang, or by entities identified by the U.S. government on a UFLPA entities list, are made with forced labor and are prohibited from entry into the United States.  The presumption also applies to goods made in, or shipped through, the PRC and other countries that include inputs made in Xinjiang.

The importer may request an exception to the presumption or assert a claim that the goods are not within the purview of the UFLPA, by providing to CBP, within 30 days from the date of this notice, a written response to the detention.  A request for an exception to the presumption must contain the information required by Section 3(b) of the UFLPA.

The importer must consult the Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's Republic of China (UFLPA Strategy), published by the Department of Homeland Security (DHS), in its role as the chair of the Forced Labor Enforcement Task Force (FLETF), on June 21, 2022, for compliance with specific importer guidance as required by the UFLPA.

The importer may submit a request to the Port Director to request an extension to the 30 days to provide documentation before the end of the detention period.  The importer may also seek approval from the CBP Port of Entry to export the merchandise at any time during the detention process.

Where CBP applies the rebuttable presumption to a shipment,  the importer must (1) fully comply with the due diligence, effective supply chain tracing, and supply chain management measures contained in the UFLPA Strategy; (2) completely and substantively respond to all CBP requests to ascertain whether the goods were mined, produced or manufactured wholly or in part with forced labor; and (3) and demonstrate by clear and convincing evidence that the good, ware,

article, or merchandise was not mined, produced, or manufactured wholly or in part by forced labor, to overcome the presumption. These requirements extend throughout the entire supply chain, to include goods that may be shipped to third countries for further processing.

Alternatively, if the importer believes that their detained merchandise is not subject to the UFLPA, the importer may provide information to CBP to that effect, *i.e*., information that the imported goods and their inputs are sourced completely from outside Xinjiang and have no connection to entities on the UFLPA Entity List. The importer must provide documentation that substantiates the absence of inputs subject to UFLPA from its supply chain. (Refer to Section IV of the CBP operational guidance document for a non-exhaustive list of documents that CBP may request from the importer.)

The importer must submit documentation to CBP via the Document Image System (DIS) or submit it to their assigned Center of Excellence and Expertise with a copy to the port of entry where shipment is detained.

If the importer provides sufficient evidence to overcome the UFLPA presumption of forced labor, or provides sufficient information that demonstrates the UFLPA is not applicable to the shipment, and there are no other admissibility concerns, CBP will release the shipment.

**Additional Information/Action Requested of Importer:**
The importer must provide sufficient documentation to trace the entire supply chain from the raw materials to the processing of downstream products to the merchandise imported into the United States. Identify all parties involved and provide a list of suppliers with names and addresses, a flow chart of the production process, and maps of the country and/or region where each part of the product originated. The importer must also provide sufficient document to demonstrate that the goods were not mined, produced, or manufactured wholly or in part with forced labor. Specific examples of relevant documentation may include:
- Certificates of origin
- Purchase orders, invoices, and proof of payment
- Packing lists
- Payment records
- Bills of lading
- Shipping records
- Production records
- Inventory records supporting production
- List of production steps and chain of custody records for the imported merchandise
- Transportation documents
- Daily manufacturing process reports

The above is not an exhaustive list and submission of the identified production and supply chain information does not guarantee release as CBP continues to investigate and identify circumstances of forced labor and connected entities which could result in the exclusion or seizure of the merchandise. Importer should consult the UFLPA Strategy and CBP's importer guidance. Additional guidance on supply chain tracing for certain commodity types is provided

UFLPA Attachment to the Notice of Detention

in the addendum below.  Additional guidance for UFLPA and forced labor can be found on the CBP website **https://www.cbp.gov/trade/forced-labor/UFLPA**.

**Tests or Inquiries to be Conducted:**

**Requested by (Date):**
Supporting documentation should be submitted in English, with original copies attached to translated versions when applicable, and provided within 30 days from the date of this detention notice. It is preferred that all supporting documents are sent to CBP in a single submission, but the importer may choose to notify CBP at the time of submission if additional supporting documents are forthcoming.

**Name of Detaining Officer:** Andrew Barrett
**CBP Point of Contact:** Savannah Trade Team savtrade@cbp.dhs.gov
**CBP Point of Contact Phone Number:** 912-721-4840
**Date of Conditional Release:** N/A
**Location of Good:** N/A
**Additional Remarks:**

THE UYGHUR FORCED LABOR PROTECTION ACT (UFLPA)
Line 1

**Addendum: Commodity Specific Supplemental Supply Chain Tracing Information**

**Aluminum products**
- Provide flowchart(s) of all manufacturing steps and distinguish what company performs each step (if more than one company is involved in the production of the aluminum product and finishing coats).
- Provide certificate(s) of origin or manufacturer's affidavit attesting to the origin of each material used to produce the aluminum product.  Manufacturer's affidavits should provide the name of the entity and specific location where each material is mined, smelted, and manufactured.
- Provide raw materials invoices; purchase orders and proof of payment; production records; and export documents and information.
- Provide details on the manufacturing process where the aluminum was produced into ingots and billets.
- Provide the location where the aluminum was further manufactured into extrusions, coils, wire, or other aluminum products.

**Batteries:**
- Identify the imported battery type(s): Cylindrical, prismatic, pouch type, solid state, lead acid, etc. (Depending on the battery type, certain processes or components listed below may or may not be applicable.)
- Provide a complete list of  raw materials, the country/region of origin of such materials and the names and addresses of the respective manufacturers and /or suppliers invoices  for battery raw material and components, such as: Lithium iron phosphate, lead, graphite, copper, positive/negative active material, carbon and binders, electrodes (anodes/cathodes), collector foils, plates, separators, electrolyte and inactive components, printed circuit board assemblies, wiring, thermistors, insulators, cell hardware, module hardware, battery jackets, etc.
- Provide a flowchart of the battery production process identifying all manufacturing parties and each transformative step(s) in which each party performs, such as: Mineral/ore extraction, slurry preparation, electrode coating and drying, electrode punching, secondary vacuum drying, electrode stacking, vacuum sealing, electrolyte filling, pouch formation, tab formation, aging, testing and packing.
- Provide a list of battery manufacturing equipment models owned by each manufacturing party such as: Coating machines; vacuum mixers, dryers, calendaring/pressing machines, slitters, stackers, winders, sealers, tab welders, electrolyte fillers and testing equipment.
- Provide all transportation documents between suppliers and manufacturers, including bills of lading, delivery receipts and arrival notices through each phase of production indicating the movement of all materials, components, sub-components, sub-assemblies, cells, and modules through the finished product exported to the United States.

**Cotton products:**
- Provide sufficient documentation to show the entire supply chain, from the origin of the cotton at the bale level to the final production of the finished product (i.e., harvesting (cultivation/extraction), purification, finishing, conversion into final product).

- Provide a flow chart of the production process and maps of the region where the production processes occur. Number each step along the production process and number any additional supporting documents associated with each step of the process.
- Identify all the parties involved in each step of the production process.
- Provide a list of suppliers associated with each step of the production process, including names and contact information (addresses, email addresses, and phone number).

**Polysilicon products:**
- Importer needs to provide documentation produced in the ordinary course of business, including complete records of transactions and supply chain documentation that demonstrate all entities involved in the manufacture, manipulation, or export of a particular good, and the country of origin of each material used in the production of the products back to the suspected source of forced labor.
- Provide a flow chart mapping the production process of each step in the procurement and production of all materials and identify the region where each material in the production originated (i.e., location of the quartzite used to make polysilicon and the location of manufacturing facilities where polysilicon is converted from ingots/wafters to solar cells and solar modules and/or the supplier and location where metallurgical grade silica was purchased).

**Polyvinyl chloride (PVC) products:**
- Provide sufficient documentation to show the entire supply chain, from the origin of the Chlorine, Carbon, and Ethylene to the final production of the polyvinyl chloride (PVC).
- Provide a flow chart of the production process and maps of the region where the production processes occur with all layers of PVC flooring including but not limited to PVC resins and calcium carbonate. Number each step along the production process and provide manufacturing records where the layers are laminated together under heat and pressure.

**Steel products**
- Provide flowchart(s) of all manufacturing steps and distinguish what company performs each step (if more than one company is involved in the production of the steel product).
- Provide certificate(s) of origin or manufacturer's affidavit attesting to the origin of each material used to produce the steel products from the raw materials through finished products. Manufacturer's affidavits should provide the name of the entity and specific location where each material is mined, sinister, blast furnace, basic oxygen furnace (BOF) or Electric Arc Furnace (EAF,) refined, continuous cast into semi-finished products, reheated and hot rolled, then produced into long products (rods/bars, sections) and flat products (plate, hot rolled coils, welded tubes, and light gage products.
- Provide raw materials invoices; purchase orders and proof of payment; production records; and export documents and information.
- Provide details on the manufacturing processes.
- Provide the location where the iron was further manufactured into semi-finished, steel, and/or stainless steel.
- Provide bills of lading and/or other documents tracing the movement of the inputs through export to the United States.

UFLPA Attachment to the Notice of Detention

**Tires for automobiles and trucks**
- Provide sufficient documentation to show the entire supply chain, from the origin of the rubber (synthetic or natural) to the final production of the finished product (i.e., rubber mixing, manufacturing of components, extrusion and cooling leading to the conversion into final product). This would include documents such as purchase orders, invoices shipping records, proof of payment for the raw materials.
- Provide a flow chart(s) of the manufacturing/production process and maps of the region where the production processes occur, and which company performs each step in the production of the tires.
- Enumerate each step along the production process and correlate any additional supporting documents associated with each step of the process.
- Identify all the parties involved in each step of the production process.
- Provide a list of suppliers associated with each step of the production process, including names and contact information (addresses, email addresses, and phone number). Provide Manufacturers Affidavits or Certifications for the textile components such as polyester, rayon, nylon as well as the Steel Mill Certificate for the Steel and Wire Spooling.
- Provide bills of lading and or other documents tracing the movement of the tires from the factory to the US.

**Tomato products:**
- Provide supply chain traceability documents demonstrating the point of origin of the tomato seeds, tomatoes, or tomato products.
- Affidavit from the tomato processing facility that identifies both the parent company and the estate that sourced the tomato seeds and or tomatoes.
- Purchase orders, invoices, and proof of payment for the tomato seeds, tomatoes, or tomato products, from the processing facility and the estate that sourced the raw materials.
- All records for the tomato seeds, tomatoes, and/or tomato products that identify all steps in the production process, from seed to finished product, from the farm to shipping to the United States.