**IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| CAMEL ENERGY, INC., | |
| Plaintiff, | Case No.: 25-00230 |
| v. | Hon._____ |
| UNITED STATES OF AMERICA and UNITED STATES CUSTOMS AND BORDER PROTECTION, | |
| Defendants. | |

**COMPLAINT**

**EXHIBIT C2**

**CEI Protest Challenging Exclusion of Entry No. 90604964026**

# EXHIBIT C2



DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

OMB CONTROL NUMBER: 1601-0017
EXPIRATION DATE: 4/30/2027

# PROTEST

Pursuant to Sections 514 & 514(a), Tariff Act of 1930 as mended, 19 CFR Part 174 et. seq.

**PROTEST NUMBER** (Supplied by CBP)

**DATE RECEIVED** (CBP Use Only)

**NOTE:** If your protest is denied, in whole or in part, and you wish to CONTEST the denial, you may do so by bringing a civil action in the U.S. Court of International Trade within 180 days after the date of mailing of Notice of Denial. You may obtain further information concerning the institution of an action by writing the Clerk of U.S. Court of International Trade, One Federal Plaza, New York NY 10007 (212-264-2800).

## SECTION I - IMPORTER AND ENTRY IDENTIFICATION

PORT: 1704

IMPORTER NUMBER: 32-050047800

IS ACCELERATED DISPOSITION BEING REQUESTED? *(19 CFR 174.22)*  ☐ Yes  ☒ No

**ENTRY DETAILS**

| PORT CODE | FILER CODE | ENTRY NUMBER | CHECK DIGIT | DATE OF ENTRY | DATE OF LIQUIDATION |
|---|---|---|---|---|---|
| 1704 | | 90604964026 | | 09/01/2025 | |

**NAME AND ADDRESS OF IMPORTER OR OTHER PROTESTING PARTY**

Name *(Last, First, MI)*: Camel Energy, Inc.
Street Address Line 1: 4355 Varsity Dr.
Street Address Line 2:
City: Ann Arbor    State: Michigan    Zip Code: 48108

## SECTION II - DETAILED REASONS FOR PROTEST

WITH RESPECT TO EACH CATEGORY, SET FORTH SEPARATELY, (1) EACH DECISION PROTESTED, (2), THE CLAIM OF THE PROTESTING PARTY, AND (3) THE FACTUAL MATERIAL AND LEGAL ARGUMENTS WHICH ARE BELIEVED TO SUPPORT THE PROTEST. ALL SUCH MATERIAL AND ARGUMENTS SHOULD BE SPECIFIC. GENERAL STATEMENTS OF CONCLUSIONS ARE NOT SUFFICIENT *(Attach Additional Sheets if necessary)*

Camel Energy protests CBP's exclusion of Entry Number 90604964026 as "subject to the Uyghur Forced Labor Prevention Act"("UFLPA") because Entry Number 90604964026 is not subject to the UFLPA, and CBP did not give Camel time to make a showing of proof on that matter. (cont.)

## SECTION III - REQUEST FOR DISPOSITION IN ACCORDANCE WITH ACTION ON PREVIOUSLY FILED PROTEST

Protesting party may request disposition in accordance with the action taken on a previously filed protest that is the subject of a pending application for further review and is alleged to involve the same merchandise and the same issues. (See 19 CFR 174.13(a)(7).) To request such disposition, enter the protest number and date of receipt of such previously filed protest. ▶

PROTEST NO. OF PREVIOUSLY-FILED PROTEST

DATE OF RECEIPT

## SECTION IV - SIGNATURE AND MAILING INSTRUCTIONS

**NAME AND ADDRESS OF PERSON TO WHOM ANY NOTICE OF APPROVAL OR DENIAL SHOULD BE SENT**

Name *(Last, First, MI)*: Heusel    Mark    V.
Street Address Line 1: 350 South Main St.
Street Address Line 2: Suite 300
City: Ann Arbor    State: MI    Zip Code: 48104

**NAME, ADDRESS, AND CBP IDENTIFICATION NUMBER TO WHICH REFUND SHOULD BE SENT**

Name *(Last, First, MI)*: Heusel    Mark    V.
Street Address Line 1: 350 South Main St.
Street Address Line 2: Suite 300
City: Ann Arbor    State: MI    Zip Code: 48104
CBP Identification Number:

**IF FILING AS ATTORNEY OR AGENT, ENTER YOUR NAME, ADDRESS, AND IMPORTER NUMBER, IF APPLICABLE**

Name *(Last, First, MI)*: Heusel    Mark    V.
Street Address Line 1: 350 South Main St.
Street Address Line 2: Suite 300
City: Ann Arbor    State: MI    Zip Code: 48104
Importer Number:

**SIGNATURE**

X *[signature: Mark V. Heusel]*

**DATE**: 09/17/2025

## SECTION V - APPLICATION FOR FURTHER REVIEW *(Optional)*
*(Fill in "Protest No." Above if this is a Separate Application for Further Review)*

| Yes | No | CHECK BOX CORRESPONDING TO YOUR ANSWER TO EACH OF THE FOLLOWING QUESTIONS: |
|---|---|---|
| ☐ | ☐ | (A) Have you made prior request of a port director for a further review of the same claim with respect to the same substantially similar merchandise? |
| ☐ | ☐ | (B) Have you received a final decision from the U.S. Court of International Trade on the same claim with respect to the same category of merchandise or do you have action involving such a claim pending before the U.S. Court of International Trade? |
| ☐ | ☐ | (C) Have you previously received an adverse administrative decision from the Commissioner of CBP or his designee or do you presently have a pending application for an administrative decision on the same claim with respect to the same category of merchandise? |

JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITIERIA IN 19 CFR 174.24 AND 174.25 *(Include Applicable Rulings) (Attach Additional Sheets if necessary)*

## SECTION VI - DECISION *(CBP Use Only)*

| | APPLICATION FOR FURTHER REVIEW EXPLANATION |
|---|---|
| ☐ Approved* <br> ☐ Denied for the following reason: <br>     ☐ Untimely filed <br>     ☐ Does not meet criteria <br>     ☐ Other, namely | *When further review only is approved, the decision on the protest is suspended, pending issuance of a protest review decision.* |
| | PROTEST EXPLANATION |
| ☐ Approved <br> ☐ Rejected as non-protestable <br> ☐ Denied *in full* for the following reason: <br> ☐ Denied *in part* for the following reason: <br>     ☐ Untimely filed <br>     ☐ See attached protest review decision <br>     ☐ Other, namely | |

| TITLE OF CBP OFFICER | SIGNATURE OF CBP OFFICER | DATE |
|---|---|---|
| | | |

## CONTINUATION OF SECTIONS II & V *(As Needed)*

### SECTION II - DETAILED REASONS FOR PROTEST *(Continuation)*

WITH RESPECT TO EACH CATEGORY, SET FORTH SEPARATELY, (1) EACH DECISION PROTESTED, (2), THE CLAIM OF THE PROTESTING PARTY, AND (3) THE FACTUAL MATERIAL AND LEGAL ARGUMENTS WHICH ARE BELIEVED TO SUPPORT THE PROTEST. ALL SUCH MATERIAL AND ARGUMENTS SHOULD BE SPECIFIC. GENERAL STATEMENTS OF CONCLUSIONS ARE NOT SUFFICIENT.

On 9/1/2025, CBP issued a notice of detention that Entry Number 90604964026 ("Entry") was detained on suspicion of being subject to the UFLPA. An attachment gave Camel 30 days to respond to the notice of detention with evidence that the Entry is not subject to the UFLPA. On 9/9/25, CBP informed Camel that as of 9/3/2025 the Entry was excluded from entry into the United States because it "is subject to the [ULFPA]." Camel protests CBP's exclusion for two reasons. First, it is premature. Camel was given 30 days to respond and was diligently preparing a response when the CBP summarily and without cause issued a Notice of Exclusion, without just cause refused to provide an explanation of such action, and without explanation, rescinded the Notices of Detention. Second, the Entry is not subject to the UFLPA because the imported merchandise and its inputs were sourced completely outside Xinjiang Uyghur Autonomous Region. Camel Power, the exporter, and Camel Energy, the importer, are the only Camel entities involved in the production, export, and import of the Merchandise, and neither of them are listed on the UFLPA entity list. To prove Camel's assertion that the Entry is not subject to the UFLPA, Camel provides the following documentation: Summary of Supply Chain Workflow; Annotated Document List; Supporting Documents. These documents prove the Entry is not subject to the UFLPA, CPB's exclusion is contrary to law, and it should be granted entry to the U.S.

### SECTION V - APPLICATION FOR FURTHER REVIEW *(Optional) (Continuation)*

JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITIERIA IN 19 CFR 174.24 AND 174.25.

## INSTRUCTIONS

**PLEASE REFER TO: Part 174, Customs Regulations**

Definitions*
- "Liquidation" means the final computation or ascertainment of the duties or drawback accruing on an entry.
- "Protest" means the seeking of review of a decision of an appropriate CBP officer. Such a review may be conducted by CBP officers who participated directly in the underlying decision.
- "Further Review" means a request for review of the protest to be performed by a CBP officer who did not participate directly in the protested decision, or by the Commissioner, or his designee as provided in the CBP Regulations. This request will only be acted upon in the event that the protest would have been denied at the initial level of review. If you are filing for further review, you must answer each question in Item 15 on CBP Form 19 and provide justification for further review in Item 16.

What matters may be protested?
1. The appraised value of merchandise;
2. The classification and rate and amount of duties chargeable;
3. All charges within the jurisdiction of the U.S. Department of Homeland Security;
4. Exclusion of merchandise from entry or delivery, or demand for redelivery;
5. The liquidation or reliquidation of an entry; and
6. The refusal to pay a claim for drawback.

Who may file a protest or application for further review?
1. The importer or consignee shown on the entry papers, or their sureties;
2. Any person paying any charge or exaction;
3. Any person seeking entry or delivery, or upon whom a demand for redelivery has been made;
4. Any person filing a claim for drawback; or
5. Any authorized agent of any of the persons described above.

Where to file protest:
With the port director whose decision is protested (at the port where entry was made).

When to file a protest:
Within 180 days after either: 1) the date of notice of liquidation or reliquidation; or 2) the date of the decision, involving neither a liquidation nor reliquidation, as to which the protest is made (e.g., the date of an exaction, the date of written notice excluding merchandise from entry or delivery or demand for redelivery); or 3) a surety may file within 180 days after the date of mailing of notice of demand for payment against its bond.

Contents of protest:
1. Name and address of the protestant;
2. The importer number of the protestant;
3. The number and date(s) of the entry(s);
4. The date of liquidation of the entry (or the date of a decision);
5. A specific description of the merchandise;
6. The nature of and justification for the objection set forth distinctly and specifically with respect to each category, claim, decision, or refusal;
7. The date of receipt and protest number of any protest previously filed that is the subject of a pending application for further review;
8. If another party has not filed a timely protest, the surety's protest shall certify that the protest is not being filed collusively to extend another authorized person's time to protest; and
9. Whether accelerated disposition is being requested.

**NOTE:** Under "Entry Details" - "Check Digit" information is optional; however, CBP would appreciate receiving the information if you can provide it. All attachments to a protest (other than samples or similar exhibits) must be filed in triplicate.

### PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. § 552a (e) (3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.

**AUTHORITY:** U.S. Customs and Border Protection (CBP) is authorized to collect the information requested on this form pursuant to Sections 514 and 514(a), Tariff Act of 1930 as amended, 19 CFR Part 174.

**PURPOSE:** Members of the trade community may submit the form to protest CBP actions and determinations, including: the appraised value of merchandise; the classification and rate and amount of duties chargeable; all charges within the jurisdiction of the U.S. Department of Homeland Security; exclusion of merchandise from entry or delivery, or demand for redelivery; the liquidation or re-liquidation of an entry; and the refusal to pay a claim for drawback.

**ROUTINE USE:** The information requested in this form may be shared externally as a "routine uses" to other government agencies if your inquiry relates to those agencies, or to assist the Department of Homeland Security in reviewing the activity subject to protest. A complete list of routine uses can be found in the system of records notice associated with this form, "Department of Homeland Security/CBP-001 - Import Information System." The Department's full list of system of records notice can be found on the Department's website at **http://www.dhs.gov/system-records-notices-sorns**.

**CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION:** Providing this information is voluntary. However, failure to provide this information may result in insufficient information, which would prevent CBP Officers to review the protest.

**Paperwork Reduction Act Statement:** An agency may not conduct or sponsor an information collection and a person is not required to respond to this information unless it displays a current valid OMB control number and an expiration date. The control number for this collection is 1651-0017. The estimated average time to complete this application is 1 hour and 3 minutes. If you have any comments regarding the burden estimate you can write to U.S. Customs and Border Protection, Office of Regulations and Rulings, 799 9th Street, NW., Washington DC 20002.

# INDEX OF EXHIBITS FOR CAMEL ENERGY INC.
# PROTEST OF CBP EXCLUSION OF ENTRY NUMBER 90604964026

## Annotated Document List

For Entry No. 90604964026 – Date of Detention: 9/1/2025

| Document Name | Purpose and Notes |
|---|---|
| **Sourcing and Production Process (Exhibit 1-6)** ||
| **Exhibit 1: AGM Battery Structure** | This document describes the major components of the AGM Battery. |
| **Exhibit 2: AGM Battery Supply Chain Due Diligence Chart** | This chart identifies names and locations of the suppliers of raw materials and components of the AGM Batteries. This chart also contains a map, which marked the locations of Camel Group's suppliers. |
| **Exhibit 3: Supply Contracts, Invoices and Payment Records, and Transportation Records of the Raw Materials and Components** | This set of documents are grouped into thirteen categories, which corresponds to Exhibit 2, as evidence of documentation relating to the payment and transportation of raw materials and components. |
| • Exhibit 3-1: Polypropylene | Proof of supply chain records. |
| • Exhibit 3-2: Separator | Proof of supply chain records. |
| • Exhibit 3-3: Pasting | Proof of supply chain records. |
| • Exhibit 3-4: Sulfuric Acid | Proof of supply chain records. |
| • Exhibit 3-5: Red Lead | Proof of supply chain records. |
| • Exhibit 3-6: Tin Ingot | Proof of supply chain records. |
| • Exhibit 3-7: Lead Calcium Alloy | Proof of supply chain records. |
| • Exhibit 3-8: Electrolytic Lead | Proof of supply chain records. |
| • Exhibit 3-9: Humic Acid | Proof of supply chain records. |
| • Exhibit 3-10: Acetylene Black | Proof of supply chain records. |
| • Exhibit 3-11: Barium Sulfate | Proof of supply chain records. |
| • Exhibit 3-12: Wooden Pallet | Proof of supply chain records. |
| • Exhibit 3-13: Stretch Film | Proof of supply chain records. |
| • Exhibit 3-14: Corner Bar | Proof of supply chain records. |
| • Exhibit 3-15: Honeycomb Board | Proof of supply chain records. |
| **Exhibit 4:**<br>• **AGM Battery Process Flowchart** | This document is offered to demonstrate that the entire manufacturing process take place at Camel Malaysia. We also include pictures |

| | |
|---|---|
| • **Field Layout of the AGM Battery Production** | depicting key manufacturing processes of the AGM Batteries. |
| **Exhibit 5: Production Records** | These sets of documents are offered to demonstrate that the AGM Batteries were manufactured and packaged on June 19, 2025 at the Malaysia plant. |
| **Exhibit 6: Inspection Flow Chart** | The last step of the production process is inspection. This Flow Chart demonstrates that the inspection was taken place 100% online. |
| **Maintaining Inventory (Exhibit 7-8)** ||
| **Exhibit 7: Purchase Orders from Royal Battery** | Transaction Documents |
| **Exhibit 8: Packing Lists and Commercial Invoices** | Transaction Documents |
| **Domestic Transportation and Custom Declaration (Exhibit 10-14)** ||
| **Exhibit 9: Transportation Map** | Exhibits 9-12 are provided as proof of the domestic transportation of the AGM Batteries to the forwarder's warehouse in Malaysia. |
| **Exhibit 10: Forwarding Agent Agreement (Domestic Transportation)** | |
| **Exhibit 11: Forwarding Agent Invoice** | |
| **Exhibit 12: Freight Forwarding Contract** | |
| **Exhibit 13: Custom Declaration Form** | Custom Documents |
| **Exhibit 14: Bill of Lading** | |
| **Exhibit 15: Certificate of Origin** | |
| **U.S. Custom Clearance and Delivery of Merchandise (Exhibits 15-18)** ||
| **Exhibit 16: Wire transfer receipt** | This document is evidence of payment made from Camel Energy Inc. to Camel Malaysia for the covered AGM Batteries. |
| **Exhibit 17: Supply Chain Mapping** | An overview of the entire supply chain. Please zoom to 200% to review. |
| **Declaration of Importer (Exhibit 19)** ||
| **Exhibit 18: Declaration of Zubo Zhang** | This document certifies the truth of statements in the response and authenticity of the documentation submitted in connection with the response. |



**DEPARTMENT OF HOMELAND SECURITY**
U.S. Customs and Border Protection

No. 1756732803096

# DETENTION NOTICE AND CUSTODY RECEIPT FOR DETAINED PROPERTY
Handbook 5200-09

1. Held for other agency?   Name of Agency:
   ☐ Yes   ☑ No

2. Certified Mail Number:

3. Investigative Case Number:

4. General Order Number:

5. Exodus Command Center Notified?
   ☐ Yes   ☑ No   Date: _____   Time: _____

6. Port Code: 1704

7. Date of Detention: 09/01/2025

8. Time (Use 24 Hours): 09:20:02

9. Entry Number: 90604964026

11. Seal or Other ID Number:

10. Detained from:
Name: CAMEL ENERGY INC

Address:
4355 Varsity Dr
ANN ARBOR, MI 48108-5004, US

Telephone Number:

12. Misc. Numbers:

13. Remarks:
THE UYGHUR FORCED LABOR PROTECTION ACT (UFLPA) Line 1

14. FPF Number (For CBP Lab Use Only):

15. Point of Contact Information - Send all correspondence to:
Savannah Trade Team savtrade@cbp.dhs.gov
Telephone Number:     Fax Number:
9127214840

16. Additional Information/Action Request from Importer/Exporter/Subject:

16a. Reason for Detention:
Subject to the Uyghur Forced Labor Prevention Act (UFLPA) and is detained pursuant to 19 USC 1499(c)

16b. ☐ Suspected counterfeit marks: Per 19 CFR 133.21, disclosure may be made to the mark owner unless information is provided within 7 business days establishing that the suspect mark is genuine.

17. Tests or Inquiries to be Conducted:

**18. PROPERTY** (By Line Item) Attach CBP 58 if conveyance

| 18a. Line Item No. | 18b. Description | 18c. Packages Number | Type | 18d. Measurement Qty. | UM | 18e. Est. Dom. Value | 18f. Samples Sent to the CBP Lab Yes or No | Date |
|---|---|---|---|---|---|---|---|---|
| 1 | LEAD-ACID BATTERY - NOT PASSENGER | 2496 | BOXES | | | $ 41523 | ☐ Y ☑ N | |
| | | | | | | $ | ☐ Y ☐ N | |
| | | | | | | $ | ☐ Y ☐ N | |
| | | | | | | $ | ☐ Y ☐ N | |

19. Detaining Officer Name:
Andrew Barrett (Print)    Andrew Barrett (Signature)    09/01/2025 (Date)

**20. ACCEPTANCE/CHAIN OF CUSTODY**

| 20a. Line Item No. | 20b. Description | 20c. Print Name/Title/Organization | 20d. Signature | 20e. Date |
|---|---|---|---|---|
| | | | | |

Shipments may be detained for up to 30 days, unless statutory authority or interagency agreement mandates that a longer period of time is required, or the importer/exporter/subject requests a longer detention period through the Port Director.

CBP Form 6051D (2/23)    CBP 6051A Continuation Sheet Attached? ☐ Yes ☑ No    Page 1 of 2

## Detention Notice and Custody Receipt for Detained Property
## INSTRUCTIONS
(Fill in all sections that apply)

| | |
|---|---|
| 1. Held for other agency | Enter an "X" in the appropriate box to indicate yes or no. If yes, provide agency name. |
| 2. Certified Mail No. | Enter number from Post Office receipt. |
| 3. Investigative Case No. | Enter OI Investigative Case Number or IA File Number Only. |
| 4. General Order No. | Enter the 15 digit General Order Number. |
| 5. Exodus Command Center | Enter an "X" on the appropriate box to indicate yes or no. If yes, provide date and time. (Export detentions only) |
| 6. Port Code | Enter the Port Code. |
| 7. Date of Detention | Enter date of detention in month/day/year. |
| 8. Time | Enter time of incident in 24-hour format (e.g. 1600). |
| 9. Entry No. | Enter the Entry Number. |
| 10. Detained from | Enter the name, address and telephone number of the person whose property has been detained. |
| 11. Seal or Other ID No. | Enter Baggage Claim Number, Evidence Bag Number, CBP seal, or any other identification attached to the property. |
| 12. Misc. Nos. | Enter other agency case number, for example. |
| 13. Remarks | Enter any remarks which may be relevant or which may be of assistance in storing or maintaining the property. Reference any previous CBP6051D number. |
| 14. FPF No. | Enter the FPF Number. (**For CBP Lab Use Only**) |
| 15. Point of Contact Information | Enter the local CBP office, SAIC, Port, or FPF address and telephone number, as appropriate. |
| 16. Additional Information | Enter the information and/or action request from party-in-interest |
| 16a. Reason for Detention | Enter explanation of why the item(s) is/are being detained. |
| 16b. Suspected Counterfeit Marks | If the "suspected counterfeit mark" box is checked, include a description of mark(s) at issue, identified by recordation number, brand name, and/or owner of protected mark(s) in the "Reason for Detention" field. |
| 17. Tests or inquires to be Conducted | Enter the process being conducted to determine if item(s) is/are in violation. |
| 18. **Property** | Enter line-item information. |
| 18a. Line Item No. | Enter group items by tariff number or SEACATS category code. Line item number corresponds to the line item number in SEACATS. |
| 18b. Description | Enter brief description of detained item. |
| 18c. Packages | Enter the number and type of packaging containing the property. (e.g. BX=box, BA=bale, EN=envelope) |
| 18d. Measurement | The block contains the quantity of the detained item given in the units of measure entered in the Unit of Measurement block. For NARCOTICS, the net weight is entered. |
| 18e. Estimated Domestic Value | Enter the estimated domestic value of the item seized. |
| 18f. Samples Sent to Lab | Enter an "X" in the box to determine if a sample was sent to the CBP Lab and list the date sent. |
| 19. Detaining Officer Name | Enter printed name of detaining officer, sign and date (first officer taking custody of the property). This initiates the Chain of Custody for all items described in Block 19. Signature is for **ALL** line items, including any CBP 6051A continuation sheet(s). |
| 20. **Acceptance/Chain of Custody** | |
| 20a. Line Item No. | Enter the line-item number(s) from "Property" section. (e.g. 1,2,3 and 5; or 1-3, 5) |
| 20b. Description | Enter item(s) being accepted. The word "ALL" or equivalent is **NOT** acceptable. |
| 20c. Print Name | Enter the name/title/organization of the individual accepting custody of item(s). |
| 20d. Signature | Have individual accepting custody of item(s) sign in this block. |
| 20e. Date | Enter date custody is accepted. |

CUSTOMS AND BORDER PROTECTION
UFLPA Attachment to the Notice of Detention

**Detention Number**: 1756732803096
**Port Code**: 1704  **Port Name**: Atlanta Intl Airport (AT - 1704
**Date of Detention**: 09/01/2025
**Entry Number**: 90604964026  **Line Number**: 1
**Broker/Importer**: CAMEL ENERGY INC
**Description of Merchandise**: LEAD-ACID BATTERY - NOT PASSENGER

**Reason for Detention:**
This immediate shipment has been identified as potentially being manufactured in the Xinjiang Uyghur Autonomous Region (Xinjiang) of the People's Republic of China (PRC), or by entities identified by the U.S. government on a Uyghur Forced Labor Prevention Act (UFLPA) entities list, or with inputs from the Xinjiang.

As such, this merchandise may be subject to the UFLPA, (Pub. L. 117-78), (22 U.S.C. Section 6901), and Section 307 of the Tariff Act of 1930, 19 U.S.C. Section 1307, and is detained in accordance with 19 U.S.C Section1499(c). If during the period of detention CBP ultimately determines the merchandise is subject to the UFLPA, the merchandise will be prohibited from entering the United States, as it will be presumed to have been produced, wholly or in part, using forced labor. The UFLPA creates a presumption that imports of all goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in the Xinjiang, or by entities identified by the U.S. government on a UFLPA entities list, are made with forced labor and are prohibited from entry into the United States. The presumption also applies to goods made in, or shipped through, the PRC and other countries that include inputs made in Xinjiang.

The importer may request an exception to the presumption or assert a claim that the goods are not within the purview of the UFLPA, by providing to CBP, within 30 days from the date of this notice, a written response to the detention. A request for an exception to the presumption must contain the information required by Section 3(b) of the UFLPA.

The importer must consult the Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's Republic of China (UFLPA Strategy), published by the Department of Homeland Security (DHS), in its role as the chair of the Forced Labor Enforcement Task Force (FLETF), on June 21, 2022, for compliance with specific importer guidance as required by the UFLPA.

The importer may submit a request to the Port Director to request an extension to the 30 days to provide documentation before the end of the detention period. The importer may also seek approval from the CBP Port of Entry to export the merchandise at any time during the detention process.

Where CBP applies the rebuttable presumption to a shipment, the importer must (1) fully comply with the due diligence, effective supply chain tracing, and supply chain management measures contained in the UFLPA Strategy; (2) completely and substantively respond to all CBP requests to ascertain whether the goods were mined, produced or manufactured wholly or in part with forced labor; and (3) and demonstrate by clear and convincing evidence that the good, ware,

article, or merchandise was not mined, produced, or manufactured wholly or in part by forced labor, to overcome the presumption. These requirements extend throughout the entire supply chain, to include goods that may be shipped to third countries for further processing.

Alternatively, if the importer believes that their detained merchandise is not subject to the UFLPA, the importer may provide information to CBP to that effect, *i.e.*, information that the imported goods and their inputs are sourced completely from outside Xinjiang and have no connection to entities on the UFLPA Entity List. The importer must provide documentation that substantiates the absence of inputs subject to UFLPA from its supply chain. (Refer to Section IV of the CBP operational guidance document for a non-exhaustive list of documents that CBP may request from the importer.)

The importer must submit documentation to CBP via the Document Image System (DIS) or submit it to their assigned Center of Excellence and Expertise with a copy to the port of entry where shipment is detained.

If the importer provides sufficient evidence to overcome the UFLPA presumption of forced labor, or provides sufficient information that demonstrates the UFLPA is not applicable to the shipment, and there are no other admissibility concerns, CBP will release the shipment.

**Additional Information/Action Requested of Importer:**
The importer must provide sufficient documentation to trace the entire supply chain from the raw materials to the processing of downstream products to the merchandise imported into the United States. Identify all parties involved and provide a list of suppliers with names and addresses, a flow chart of the production process, and maps of the country and/or region where each part of the product originated. The importer must also provide sufficient document to demonstrate that the goods were not mined, produced, or manufactured wholly or in part with forced labor. Specific examples of relevant documentation may include:
- Certificates of origin
- Purchase orders, invoices, and proof of payment
- Packing lists
- Payment records
- Bills of lading
- Shipping records
- Production records
- Inventory records supporting production
- List of production steps and chain of custody records for the imported merchandise
- Transportation documents
- Daily manufacturing process reports

The above is not an exhaustive list and submission of the identified production and supply chain information does not guarantee release as CBP continues to investigate and identify circumstances of forced labor and connected entities which could result in the exclusion or seizure of the merchandise. Importer should consult the UFLPA Strategy and CBP's importer guidance. Additional guidance on supply chain tracing for certain commodity types is provided

in the addendum below.  Additional guidance for UFLPA and forced labor can be found on the CBP website **https://www.cbp.gov/trade/forced-labor/UFLPA**.

**Tests or Inquiries to be Conducted:**

**Requested by (Date):**
Supporting documentation should be submitted in English, with original copies attached to translated versions when applicable, and provided within 30 days from the date of this detention notice. It is preferred that all supporting documents are sent to CBP in a single submission, but the importer may choose to notify CBP at the time of submission if additional supporting documents are forthcoming.

**Name of Detaining Officer:** Andrew Barrett
**CBP Point of Contact:** Savannah Trade Team savtrade@cbp.dhs.gov
**CBP Point of Contact Phone Number:** 9127214840
**Date of Conditional Release:** N/A
**Location of Good:** N/A
**Additional Remarks:**

THE UYGHUR FORCED LABOR PROTECTION ACT (UFLPA)
Line 1

UFLPA Attachment to the Notice of Detention

**Addendum: Commodity Specific Supplemental Supply Chain Tracing Information**

**Aluminum products**
- Provide flowchart(s) of all manufacturing steps and distinguish what company performs each step (if more than one company is involved in the production of the aluminum product and finishing coats).
- Provide certificate(s) of origin or manufacturer's affidavit attesting to the origin of each material used to produce the aluminum product.  Manufacturer's affidavits should provide the name of the entity and specific location where each material is mined, smelted, and manufactured.
- Provide raw materials invoices; purchase orders and proof of payment; production records; and export documents and information.
- Provide details on the manufacturing process where the aluminum was produced into ingots and billets.
- Provide the location where the aluminum was further manufactured into extrusions, coils, wire, or other aluminum products.

**Batteries:**
- Identify the imported battery type(s): Cylindrical, prismatic, pouch type, solid state, lead acid, etc. (Depending on the battery type, certain processes or components listed below may or may not be applicable.)
- Provide a complete list of  raw materials, the country/region of origin of such materials and the names and addresses of the respective manufacturers and /or suppliers invoices  for battery raw material and components, such as: Lithium iron phosphate, lead, graphite, copper, positive/negative active material, carbon and binders, electrodes (anodes/cathodes), collector foils, plates, separators, electrolyte and inactive components, printed circuit board assemblies, wiring, thermistors, insulators, cell hardware, module hardware, battery jackets, etc.
- Provide a flowchart of the battery production process identifying all manufacturing parties and each transformative step(s) in which each party performs, such as: Mineral/ore extraction, slurry preparation, electrode coating and drying, electrode punching, secondary vacuum drying, electrode stacking, vacuum sealing, electrolyte filling, pouch formation, tab formation, aging, testing and packing.
- Provide a list of battery manufacturing equipment models owned by each manufacturing party such as: Coating machines; vacuum mixers, dryers, calendaring/pressing machines, slitters, stackers, winders, sealers, tab welders, electrolyte fillers and testing equipment.
- Provide all transportation documents between suppliers and manufacturers, including bills of lading, delivery receipts and arrival notices through each phase of production indicating the movement of all materials, components, sub-components, sub-assemblies, cells, and modules through the finished product exported to the United States.

**Cotton products:**
- Provide sufficient documentation to show the entire supply chain, from the origin of the cotton at the bale level to the final production of the finished product (i.e., harvesting (cultivation/extraction), purification, finishing, conversion into final product).

- Provide a flow chart of the production process and maps of the region where the production processes occur. Number each step along the production process and number any additional supporting documents associated with each step of the process.
- Identify all the parties involved in each step of the production process.
- Provide a list of suppliers associated with each step of the production process, including names and contact information (addresses, email addresses, and phone number).

**Polysilicon products:**
- Importer needs to provide documentation produced in the ordinary course of business, including complete records of transactions and supply chain documentation that demonstrate all entities involved in the manufacture, manipulation, or export of a particular good, and the country of origin of each material used in the production of the products back to the suspected source of forced labor.
- Provide a flow chart mapping the production process of each step in the procurement and production of all materials and identify the region where each material in the production originated (i.e., location of the quartzite used to make polysilicon and the location of manufacturing facilities where polysilicon is converted from ingots/wafters to solar cells and solar modules and/or the supplier and location where metallurgical grade silica was purchased).

**Polyvinyl chloride (PVC) products:**
- Provide sufficient documentation to show the entire supply chain, from the origin of the Chlorine, Carbon, and Ethylene to the final production of the polyvinyl chloride (PVC).
- Provide a flow chart of the production process and maps of the region where the production processes occur with all layers of PVC flooring including but not limited to PVC resins and calcium carbonate. Number each step along the production process and provide manufacturing records where the layers are laminated together under heat and pressure.

**Steel products**
- Provide flowchart(s) of all manufacturing steps and distinguish what company performs each step (if more than one company is involved in the production of the steel product).
- Provide certificate(s) of origin or manufacturer's affidavit attesting to the origin of each material used to produce the steel products from the raw materials through finished products. Manufacturer's affidavits should provide the name of the entity and specific location where each material is mined, sinister, blast furnace, basic oxygen furnace (BOF) or Electric Arc Furnace (EAF,) refined, continuous cast into semi-finished products, reheated and hot rolled, then produced into long products (rods/bars, sections) and flat products (plate, hot rolled coils, welded tubes, and light gage products.
- Provide raw materials invoices; purchase orders and proof of payment; production records; and export documents and information.
- Provide details on the manufacturing processes.
- Provide the location where the iron was further manufactured into semi-finished, steel, and/or stainless steel.
- Provide bills of lading and/or other documents tracing the movement of the inputs through export to the United States.

UFLPA Attachment to the Notice of Detention

**Tires for automobiles and trucks**
- Provide sufficient documentation to show the entire supply chain, from the origin of the rubber (synthetic or natural) to the final production of the finished product (i.e., rubber mixing, manufacturing of components, extrusion and cooling leading to the conversion into final product). This would include documents such as purchase orders, invoices shipping records, proof of payment for the raw materials.
- Provide a flow chart(s) of the manufacturing/production process and maps of the region where the production processes occur, and which company performs each step in the production of the tires.
- Enumerate each step along the production process and correlate any additional supporting documents associated with each step of the process.
- Identify all the parties involved in each step of the production process.
- Provide a list of suppliers associated with each step of the production process, including names and contact information (addresses, email addresses, and phone number). Provide Manufacturers Affidavits or Certifications for the textile components such as polyester, rayon, nylon as well as the Steel Mill Certificate for the Steel and Wire Spooling.
- Provide bills of lading and or other documents tracing the movement of the tires from the factory to the US.

**Tomato products:**
- Provide supply chain traceability documents demonstrating the point of origin of the tomato seeds, tomatoes, or tomato products.
- Affidavit from the tomato processing facility that identifies both the parent company and the estate that sourced the tomato seeds and or tomatoes.
- Purchase orders, invoices, and proof of payment for the tomato seeds, tomatoes, or tomato products, from the processing facility and the estate that sourced the raw materials.
- All records for the tomato seeds, tomatoes, and/or tomato products that identify all steps in the production process, from seed to finished product, from the farm to shipping to the United States.



1 E Bay Street
Savannah, GA 31401

**U.S. Customs and Border Protection**

Date: September 9, 2025

Camel Energy Inc
4355 Varsity DR
Ann Arbor, MI, 48108

Dear Camel Energy Inc,

You are hereby advised that the below listed entry is subject to the Uyghur Forced Labor Prevention Act (UFLPA, Pub. L. 117-78) and is excluded from entry into the United States.

| | |
|---|---|
| Article(s) Excluded: | Batteries |
| Quantity: | 2496 |
| Vessel/Trip: | APL ESPLANADE 1TUEJ J |
| Bill of Lading: | CMDU-AYN1260080 |
| Entry Number (if any): | 906-04964026 |

Entry Line Number (if other than entire shipment): 1

Date of Exclusion:     September 3, 2025

Based on a review of the entry or documents submitted:

■ This merchandise has been identified as having been produced (in whole or in part) or having input(s) from the Xinjiang Uyghur Autonomous Region (XUAR) or by an entity on the UFLPA Entity List; therefore, it is presumed to be prohibited under 19 U.S.C. 1307 and not entitled to entry. Accordingly, this shipment is excluded from entry.

**OR**

☐ This merchandise is excluded because the importer failed to request an exception or failed to provide evidence to demonstrate the merchandise was not produced in whole or in part in the Xinjiang Uyghur Autonomous Region (XUAR) or by an entity on the UFLPA Entity List **within 30 days (or specific deadline date (if an extension was granted))** from which the cargo was

detained.

**OR**

☐ Insufficient evidence was provided to demonstrate that the merchandise was not produced in whole or in part in the XUAR or by an entity on the UFLPA Entity List.

**OR**

☐ CBP found insufficient evidence to grant an exception pursuant to Section 3(b) of the UFLPA.

Additional Information:


You may export the subject merchandise from the United States under CBP supervision in accordance with 19 C.F.R.§§ 18.25 –18.27. If the merchandise is not exported timely, it will be disposed of in accordance with CBP policies and procedures or you may protest the exclusion of this shipment pursuant to 19 U.S.C. § 1514.

You are hereby notified that any future attempt to import such articles may result in seizure and forfeiture.

Should you have any questions regarding this matter please contact:

Assistant Port Director Scott Huntley
william.s.huntley@cbp.dhs.gov
Cell (912) 650-0037


Sincerely,

*[signature]*

Joshua Nuutzhorn
Port Director
U.S. Customs and Border Protection


UFLPA Notice of Exclusion Continuation Sheet Attached?    ☐ Yes    ☒ No