PUBLIC

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL ENERGY, INC.,

                  Plaintiff,

      v.

UNITED STATES OF AMERICA and
UNITED STATES CUSTOMS AND
BORDER PROTECTION,

                Defendants.

Before: Claire R. Kelly, Judge

Case No.: 25-00230

__PUBLIC VERSION__

---

## PLAINTIFF'S PUBLIC MOTION TO COMPEL[1]

Plaintiff Camel Energy, Inc. ("Camel Energy" or "Plaintiff") respectfully moves this Court under USCIT Rule 37(a) to compel Defendants United States of America and United States Customs and Border Protection (collectively, "the Government" or "Defendants") to produce documents and their attachments that are identified by Bates number or Control number—where no Bates number was provided because the document was withheld completely and merely identified in Defendants' privilege log—in Exhibit A and Exhibit B.[2] Further, Camel Energy

---

[1] While Plaintiff does not identify this as an "expedited" or "emergency" motion, Plaintiff would note that this case is proceeding on an expedited litigation schedule and a deposition of Defendants' witness CEE Officer Juan Porras is schedule for next Wednesday, February 4, 2026.

[2] **Exhibit __A__** is Defendants' attorneys-eyes-only privilege log. Because Defendants marked the privilege log attorneys-eyes-only, it is filed under seal. **Exhibit __B__** is the exact list of all documents withheld or with redactions identified by Plaintiff's and sought to compel. Exhibit B pares down the information in Exhibit C and offers the Court a more accessible list of the Government-redacted documents, all identified by Bates or Control number, and the claimed privilege underlying the redactions. While Plaintiff moves to compel production of all the documents identified in Exhibit B, Plaintiff is most concerned about the redactions on the documents Bates stamped GOV0001561-1564, GOV0001565-1566, GOV0001619-1622, GOV0001632-1640, GOV0001220-1226, GOV0000874-877, GOV0001567-1571, GOV0001186, GOV0001729-1739, GOV0000855-857, and GOV0001677-1690, all of which appear to be important documents and all of which were introduced as exhibits at Officer Bristol's deposition.

PUBLIC

moves, pursuant to USCIT Rule 30(d), for an order directing the Government to produce Officer John Bristol for an additional four-hour deposition. Last, Camel Energy moves for an order under USCIT Rule 37(a)(4) that directs the Government to pay Plaintiff's reasonable expenses incurred in making this motion, including attorney's fees.

USCIT Rule 26 and 34 allow broad discovery into any relevant, nonprivileged matter because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *United States v. Optrex Am., Inc.*, 28 C.I.T. 987, 2004 WL 1490418 at *1 (2004) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The purposes of discovery are frustrated when a claim of privilege is over-applied, *i.e.,* where a party redacts as privileged documents or parts of documents that are not privileged. *See id.* (finding "the spirit of the rules is violated" by, *inter alia*, "unnecessary use of defensive weapons or evasive responses").

This case should be simple. It is about whether the Government properly denied and excluded two of Plaintiff's containers of goods from entry into the United States under the Uyghur Forced Labor Prevention Act ("UFLPA") and 19 U.S.C. § 1307. ECF 2 at 1. The Court has dealt with cases like this one and knows how straightforward answering that question should be. Indeed, Camel Energy's counsel anticipated a straightforward case, which is why they represented to the Court that this case would involve minimal discovery and could proceed on an expedited schedule. This case has become complicated, however, not because of any of the facts or legal complexities involved in this case, but by the Government's extensive, almost weaponized use, of redactions in and withholding of its documents and assertion of privilege during the deposition of the Government's only named witness, which has prevented Plaintiff and its counsel from learning the basic factual underpinnings of the Government's decision to exclude these goods. In other words, the Government has excluded Camel Energy's merchandise, *but it refuses to reveal why*. This begs

PUBLIC

the question: How can the Government properly defend its case if it will not allow Plaintiff and the Court to see the facts behind the very decision the Court will be reviewing?

During the deposition of the Government's only named witness, it was revealed that the Government's only explanation that it excluded Camel Energy's merchandise is because the merchandise violates the UFLPA, but contrawise the Government has said that the facts of the alleged violation itself—i.e., *why* and *how* the Government assumed the goods violated the UFLPA on entry is privileged, going so far as to instruct its witness to not answer the very basic question: Why were Camel Energy's goods excluded and its protest denied?[3]

The Government has stonewalled Camel Energy in both production of documents and the deposition of CBP Officer John Bristol—the only person the Government named in its initial disclosures—to make sure that Camel Energy cannot discover why, factually, the Government excluded its goods to begin with and why it has not released those goods despite admitting that it has no evidence to support a claim that forced labor exists in its supply chain. At Officer Bristol's deposition, he revealed that the Government's only explanation for why it excluded Camel Energy's merchandise is because the merchandise allegedly violates the UFLPA. However, when Camel Energy's counsel asked, point blank: "What was the fact that made that potential [UFLPA violation] exist?" but the Government's counsel would not let him answer, saying, "I'm objecting on law enforcement sensitive privilege grounds, and I'm instructing him not to answer." *See* Transcript of 1/20/2026 Deposition of Officer John Bristol ("Transcript") at 40:19-24 (attached under seal as **Exhibit <u>C;</u>** portions of the Transcript cited in this Motion have been highlighted for

---

[3] Officer Bristol testified that no companies in Camel Energy's supply chain appear on the UFLPA Entity List and has no evidence that any inputs from XUAR. Transcript, at 110:1-16.

PUBLIC

ease of reference); *see also* Transcript at 50:10-25.[4] Plaintiff's counsel asked again directly, "why

were the goods detained," and again the Government refused to allow the witness to answer.

Transcript at 49:10-16.

The Government's refusal to let Camel Energy know the facts[5] of the case is seen most

clearly in its document production. First, the Government failed to produce a critical internal memo

document that disclosed that CBP may be acting upon secret internal guidance to automatically

exclude Plaintiff's merchandise. GOV0000855[6] ("Guidance") (*see also* Exhibit D and Exhibit E

to this Motion). In its initial responses to Plaintiff's discovery requests, the Government failed to

---

[4] The Government's position is cofounding. Indeed, it verges on straying into bad faith nonsense. First, the Government would not let Officer Bristol testify about the facts supporting the Government's claim that the UFLPA applies to Camel Energy's merchandise. *See e.g.*, 40:19-24; (Plaintiff's Counsel: "What was the fact that made that potential [UFLPA violation] exist?" but the Governments' counsel would not let him answer, saying, "I'm objecting on law enforcement sensitive privilege grounds, and I'm instructing him not to answer."). Then, *not sixty seconds later*, the Government shamelessly prevented Officer Bristol from answering the question, "I want to know what provision of the UFLPA was violated?" by objecting, "I'm objecting to the question. He's not a lawyer. He can ask -- *he can answer factually*." Transcript 50:10-25. (emphasis added). Apparently, the only witness the Government identified in their initial disclosures cannot testify about either the provisions of the UFLPA that were allegedly violated (if any) or the facts (if any) applied by CBP, or even the very basic question, on what factual basis did the CBP rely on in deciding to detain over 200 containers of goods, worth millions of dollars.

[5] Camel Energy just wants the facts. Camel Energy's counsel carefully and repeatedly explained to opposing counsel in Officer Bristol's deposition that he did not want Officer Bristol to testify to the name of any informants or give identifying information about any informants. *See* Transcript at 171:23-25, 172:1-4 [ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████ ]].

[6] The Government originally produced this document without any designation or restriction under the protective order. However, after more than two full weeks and a deposition where this document was discussed at length, on January 22, 2026, the Government's counsel emailed Plaintiff's counsel out of the blue stating that it "inadvertently disclosed the document without a proper designation" and was re-producing and redesignating that critical document as "Confidential" pursuant to the protective order (ECF 31), thus prohibiting the public from viewing this documents. This demonstrates the lengths the Government will go to keep its "secret" UFLPA List a secret.

PUBLIC

identify and produce this document. It was not until Plaintiff provided Government's counsel with a screenshot of the document, which it had obtained from a CBP officer in Dallas Forth Worth, that the Government finally admitted its existence and produced it to Plaintiff. But for Plaintiff having received a screenshot of that document from another CBP officer and providing it to Government's counsel, it is unclear if the Government would have ever produced what appears to now be *the* critical document in this litigation. Moreover, the documents in the Government's most recent batch of production that include emails, communications, and notes describing the factual underpinnings of CBP's exclusion and denial of Camel Energy's protests under the UFLPA are so redacted as to be useless. The Government's discovery strategy appears to be to obfuscate the simple truth of this case: The Government has no factual basis—and thus no legal basis—to exclude Camel Energy's merchandise and deny its protest.

The Government's recalcitrance has brought this case to a crossroads. For one, it is not clear how the Government can defend its assertion that Camel Energy's merchandise is subject to the UFLPA if it will not reveal any fact supporting that legal conclusion. For another, the Government's refusal to reveal the heart of this case has stymied Camel Energy; Camel Energy can—and will—move for summary judgment, but it will have do so blindly, without any idea of what facts the Government has (if any) that make it believe the UFLPA applies to Camel Energy's merchandise. Because this is not how litigation is supposed to proceed, *see Optrex Am.*, 2004 WL 1490418 at *1, and because Camel Energy has a right under USCIT Rule 26 and 34 to the facts of the case, Camel Energy requests the court conduct an *in camera* review of the documents and attachments identified in Exhibit A and Exhibit B and enter an order directing the Government to produce versions of the documents that do not redact or withhold the facts,[7] if any, on which the

---

[7] As well as any other non-privileged information.

PUBLIC

Government relied when making its determination that Camel Energy's merchandise should be excluded under the UFLPA.

As required by USCIT Rules 7(f) and 37(a)(1), Camel Energy certifies that it conferred with the Government in good faith to attempt to obtain the relief sought in this motion on January 14 and 28, 2026, but found no agreement.

## FACTUAL BACKGROUND

Camel Energy served Defendants with its Rule 34 requests for production of documents on November 16, 2025. ECF 24. On December 16, Defendants responded to Camel Energy's requests for production and stated they intended to make rolling production of documents. That same day, Defendants produced 857 pages of documents that Camel Energy had previously sent to the Government—in other words, on December 16 Defendants gave Camel Energy nothing it didn't already have. Also, notably, in its response to Request 6 for internal guidance relied on by CBP, the Government identified two public documents (UFLPA Operational Guidance for Importers and the UFLPA Strategy Report to Congress) and did not indicate whether it would supplement this request. However, two weeks earlier on December 2, 2025, Plaintiff's attorney emailed a CBP Officer at the Port of Dallas concerning the exclusion of an entry that is not subject to the present litigation and, at the time, was not subject to any litigation.[8] A copy of this communication is provided as **Exhibit <u>D</u>**. In response to a question about why the Government had excluded Plaintiff's merchandise, the Dallas CBP Officer stated he was "[utilizing guidance] for the immediate exclusion for specific batteries" and attached the below screenshot:

---

[8] Counsel for Plaintiff's email to the Dallas CBP Officer concerned Entry No. DSV-75955028. On December 2, 2025, Entry No. DSV-75955028 was not the subject of any litigation, but it became the subject of litigation on December 9, 2025. *See Camel Energy, Inc. v. United States et al.*, 25-420 (Ct. Int'l Trade, Kelly, J.).

PUBLIC

Camel Group Companies' names continue to evolve and are they now additionally being called: Camel New Energy, Energy Technology Company, New Energy Technology Company, and Ulectric per their employees in US/China.

1. The Forced Labor Division (FLD) has approved **immediate exclusion under UFLPA** for the following battery models identified below:

    a) <u>Automotive AGM start-stop battery</u>
       Models: **H4, H5, H6, H7,** and **H8**
       Models: H3, H9 and AUX14 – subject to applicability review if deem appropriate by the Machinery Center.

       **The G31 model series** was included but specific model numbers were not mentioned.
       Models: **G31, G31T, G31-1000, G31-1000T,** and **G31FT-100**

    b) <u>**Golf Cart Batteries**</u>- All golf cart batteries.
       Models: **S3856, S38105, S5156, S51505, S51105P, S51160, S51160P, S72105P3-D-180, 3-D-210, 4-D-140,** and **6-D-120G**

    c) <u>**Garden Batteries**</u>: Models: **U Series.**
**AUTOMOTIVE AGM START-STOP BATTERY**

      After Plaintiff discovered that the Government failed to provide this document as part of its production, Plaintiff's counsel emailed the screenshot to Government's counsel on December 18, 2025, identified who at CBP would be in custody of the document, and specifically requested production of the full document. Despite having been provided all of this information to locate the document, it was not until January 5, 2026, the next year, that the Government finally responded that it was merely discussing production of the document. After significant back and forth, including Plaintiff having to threaten to raise this issue to the Court because the Government's only named witness was about to be deposed, the Government finally produced the document on January 7, 2026. But for Plaintiff's luck and honesty from one CBP officer, it is unclear if the Government would have ever produced that document, and based on what the Government has produced, it certainly would have been redacted to the point of being unrecognizable.

      On January 12, 2026, merely one week before Plaintiff's schedule deposition of John Bristol, Defendants *only* named witness, Defendants produced a second batch of documents, identified in Exhibit A and Exhibit B, that were almost entirely redacted as either "Law

PUBLIC

Enforcement Privileged" ("LEP") or "Deliberative Process Privileged" ("DPP").[9] It also included

multiple attachments of documents that were completely withheld for the same reasons. Plaintiff's

attorneys have done their best to identify what they believe to be key documents in this litigation,

based on the limited context of email chains and very limited content that the Government left

unredacted. Those documents are Bates stamped GOV0001561-1564, GOV0001565-1566,

GOV0001619-1622,        GOV0001632-1640,        GOV0001220-1226,        GOV0000874-877,

GOV0001567-1571, GOV0001186, GOV0001729-1739, GOV0000855-857, GOV0001643-

GOV0001647, and GOV0001677-1690 and are attached as **Exhibit E**. These documents serve

merely as an example of what the Government has done as the Government similarly redacted the

rest of the documents. On January 14, Camel Energy asked Defendants to produce un-redacted

versions of documents identified in Exhibit A and Exhibit B, but Defendants refused.

On January 20, Camel Energy deposed Officer John Bristol, who is the only individual

identified in the Government's initial disclosures. At that time, Camel Energy was already

preparing this motion because it knew that the deposition might be hampered by Defendants'

claims of privilege. But, because this case is expedited, time is of the essence, the relief this Court

will give is uncertain, Defendants repeated threats to only produce Mr. Bristol once, and because

Camel Energy is incurring millions of dollars of damages, Plaintiff's counsel opted to go forward

with the deposition. At the deposition, the Government doubled down on its privilege claims, even

preventing Officer Bristol from testifying to his own understanding of the basic facts that lead the

---

[9] Nearly all of these documents were also tagged as "Attorney's Eyes Only" pursuant to the parties'
protective order (ECF 31), meaning that only Plaintiff's counsel is able to view these documents.
However, while Plaintiff's counsel can view the documents, Defendants have redacted the vast
majority of the content of those documents as either LEP or DPP, preventing even Plaintiff's
counsel and the court from viewing what Plaintiff surmises to be the underlying facts of this case
hidden beneath these redactions.

PUBLIC

Government to exclude Camel Energy's merchandise. *See* Transcript at 174:14-24 [[█████████

████████████████████████████████████████████████████████

████████████████████████████████████]]. When Plaintiff's counsel

confronted Defendants' counsel about the absurdity of their redactions and objections, questioning

how they could defend a suit without revealing the factual basis supporting their legal conclusions,

Defendants' counsel remained silent. *See* Transcript at 39:20-25, 40:1-4, and pp. 46-49 (Plaintiff's

Counsel: "How are you going to defend this case if you are not ever going to articulate, explain,

or describe the reasons behind why these goods were detained? . . . for the record, from this point

forward, at no point is the government going to tell us why these goods are detained other than

saying that there was a threat of UFLPA. Is that correct?" Defendants' Counsel "To the extent that

the contents of those allegations are law enforcement sensitive privilege, we're going to assert the

privilege.").

**LEGAL BACKGROUND**

### I.    General Legal Background

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper

litigation." *Optrex Am.*, 2004 WL 1490418 at *1 (quoting *Taylor,* 329 U.S. at 507). That is why

USCIT Rule 26(b) permits broad discovery "regarding any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case[.]" Where privilege is

overclaimed, *i.e*, where documents are withheld under false claims of privilege—the purposes of

discovery are frustrated. *See id.* (finding "the spirit of the rules is violated" by, *inter alia*,

"unnecessary use of defensive weapons or evasive responses."). When a party frustrates the

purposes of discovery by producing overly redacted responsive documents, USCIT Rule 37(a)

permits a party to compel production in useful form.

PUBLIC

## II.    Legal Background on Deliberative Process Privilege ("DPP")

DPP is a common law executive privilege that "is subject to judicial oversight." *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307-08 (Fed. Cir. 2006) (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)). Thus, DPP's applications can be overcome by a sufficient showing of need. *Sealed Case*, 121 F.3d at 737–38. Determining whether a document should be redacted under DPP is a two-step process. First, the Court must determine whether the Government has shown that DPP applies. Second, the Court must determine whether, even though the Government has shown that DPP should apply, the document should nevertheless be produced. *See Marriott*, 437 F.3d at 1307-08 ("[A] showing of compelling need can overcome the qualified deliberative process privilege.").

### A.    Government's Burden of Proof

To claim DPP, the Government must "(1) make a formal claim of privilege via the head of the agency or his delegate, (2) submit an affidavit showing 'actual personal consideration by that official,' and (3) provide a detailed explanation of what the document is and why it falls within the scope of the privilege." *United States v. Greenlight Organic Inc.*, 279 F. Supp. 3d 1317, 1320 (Ct. Int'l Trade 2017). Importantly, "'each time [the deliberative process privilege] is asserted the district court must undertake a fresh balancing of the competing interests,' taking into account factors such as 'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the litigation,' 'the role of the government,' and the 'possibility of future timidity by government employees.'" *Sealed Case*, 121 F.3d at 737–38 (quotation omitted); *see also In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010) ("[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information.").

PUBLIC

> **i.    DPP must be invoked by an official with authority to do so, and such authorized official must show actual, personal consideration of the allegedly privileged documents.**

The propriety and specificity of delegation of authority to invoke DPP is important because any invocation of DPP is a serious matter that impedes resolution of a case, thwarts application of USCIT Rule 26, and prevents the parties (and/or the Court) from obtaining "[m]utual knowledge of all the relevant facts[.]" *Optrex*, 2004 WL 1490418 at *1 (quoting *Taylor,* 329 U.S. at 507). In the Federal Circuit, a "formal claim of privilege" can only be made by "the head of an Agency" or, "*when carefully undertaken,*" the head of an Agency may "delegate authority to invoke the deliberative process privilege on the Agency's behalf." *Marriott*, 437 F.3d at 1308 (emphasis added). In *Marriott*, the Federal Circuit considered "an excellent example of the Agency's care in the delegation process," where the Commissioner "issued Delegation Order No. 220 (Rev.3)," which "establish[ed] detailed criteria for claiming the deliberative process privilege." *Id*. Moreover, the Commissioner delegated authority to "a high ranking Agency official." *Id*. After showing a person authorized to invoke DPP, the Government must show by affidavit that the delegee gave actual, personal consideration to each document. *See Greenlight Organic*, 279 F. Supp. 3d at 1320.

> **ii.    The individual authorized to invoke DPP must explain why DPP applies.**

To invoke DPP, "[t]wo requirements are essential…: the material must be predecisional and it must be deliberative." *Sealed Case*, 121 F.3d at 737 (cleaned up). "The procedural requirements [of invoking DPP] are designed to "ensure that the privilege[s are] presented in a deliberate, considered, and reasonably specific manner." *Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000) (adopted by the Federal Circuit in *Marriott*, 437 F.3d at 1308).

With respect to the first requirement that documents must be **pre**decisional, this excludes all **post**decisional documents as outside the scope of DPP. *See Sealed Case*, 121 F.3d at 737 ("The

PUBLIC

deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual[.]"). "Post-decisional communications containing or explaining final agency policy and decisions are not considered deliberative and thus are not protected from disclosure." *U.S. Steel Corp. v. United States*, 578 F. Supp. 418, 420 (Ct. Int'l Trade 1983) (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151–2 (1975)). To be sure, postdecisional documents are "inextricably intertwined" with predecisional documents such that they "inevitably reveal the government's deliberations" they may be covered by DPP, but Court's typically look at such claims of intertwinement and inevitably with skepticism. *id*. The Court must view such broad arguments with skepticism "[t]o prevent the development of secret law." *Id*. (citing *Sterling Drug Inc. v. F.T.C.,* 450 F.2d 698 at 708 (D.C.Cir.1971)). The prevention of secret law is one of the main reasons courts "must require [the government] to disclose orders and interpretations *which it actually applies* before it." *Id*. (emphasis added).

With respect to the second requirement that a document be deliberative, "factual material contained in deliberative documents also falls outside of the privilege, to the extent that it is severable." *Id*. Thus, even if a document contains government deliberations, the underlying facts on which the deliberation is based are not covered by DPP. Additionally, "[w]hile documents may be pre-decisional and deliberative when originated, they will not be entitled to any deliberative privilege if they are applied by the decisionmakers—as 'secret law'—or otherwise expressly adopted or incorporated by reference into the final decision." *Meyer Corp., U.S. v. United States*, 37 ITRD 2845 (Ct. Int'l Trade 2016) (holding that documents directing application of an already-made decision are not covered by DPP).

Even then, "where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal

12

PUBLIC

government deliberations in this context does not serve 'the public's interest in honest, effective government." *Sealed Case*, 121 F.3d at 737 (quotations omitted). The government misconduct exception to DPP applies under the low "*reason to believe*" standard and the mere fact that it "*may* shed light on government misconduct" is sufficient to deny DPP. *Id*.

**B.    Camel Energy's Burden of Proof.**

If the Government meets its burden, "the burden shifts to the party seeking discovery of the privileged information." *Greenlight Organic*, 279 F. Supp. 3d at 1320. As the court in *U.S. Steel Corp* noted, DPP is only a "*qualified* privilege." *See U.S. Steel Corp.*, 578 F. Supp. at 420.

When evaluating the need of the requesting party, the Court "may conduct *in-camera* review of the documents." *Marriott*, 437 F.3d at 1308 (contrasting DPP with the military and state-secret privileges which do not allow *in camera* review of documents). The Court's "need determination is to be made flexibly on a case-by-case, *ad hoc* basis." *Sealed Case*, 121 F.3d at 737. Most importantly, the Court's analysis is a "balancing of the competing interests." *Id*. The Court's *ad hoc* analysis should use every tool at its disposal to craft a discovery resolution that allows the parties (or their lawyers) to gather the information necessary effectively to litigate. *See id*.; *see also Optrex Am.*, 2004 WL 1490418 at *1 ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.") (quoting *Taylor,* 329 U.S. at 507).

**III.    Legal Background on Law Enforcement Privilege ("LEP")**

When the government claims LEP to redact all or part of a document, the Court's analysis is much the same as DPP. The Government bears the initial burden of proof. *See Greenlight Organic*, 279 F. Supp. 3d at 1320. "To meet this burden, the party asserting the law enforcement privilege must show that the documents contain . . . information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,'

PUBLIC

information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise . . . interfere[ ] with an investigation.'" *New York*, 607 F.3d at 944.

If the Government meets its burden, then the burden shifts to the party seeking discovery to "show (1) that its suit is 'non-frivolous and brought in good faith,' (2) that 'the information sought is [not] available through other discovery or from other sources,' and (3) that the information sought is 'importan[t]' to the party's case." *See New York*, 607 F.3d at 945 (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1343 (D.C.Cir.1984)). LEP is only a *qualified* privilege. *See id* (emphasis added). Thus, even where the Government properly asserts LEP, "[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *Id.* The Court should use all the tools it possesses and consider the factors (discussed in detail below) to ensure the parties interests are balanced. *See e.g.*, *Sealed Case*, 121 F.3d at 737; *Tuite v. Henry*, 98 F.3d 1411, 1418 (D.C. Cir. 1996).

## ARGUMENT

### I.    Deliberative Process Privilege does not apply.

The Government claims that DPP applies to documents identified in Exhibit A and Exhibit B. Despite its claim, the Government hasn't even attempted to fulfill its legal obligation to prove DPP applies. Moreover, DPP cannot apply to all the documents identified in Exhibit A and Exhibit B because many of those documents are plainly post-decisional and some of those documents must, logically, contain the facts supporting the Government's legal decision to exclude Camel Energy's merchandise. If there are no facts supporting the Government's legal position, then this Court should force the Government to un-redact its documents and reveal that truth for the Court and Camel Energy to see.

PUBLIC

### A.     The Government has not made a formal claim of DPP.

The Federal Circuit has held that a "formal claim of privilege" can only be made by "the head of an Agency," or the head of an Agency may "delegate authority to invoke the deliberative process privilege on the Agency's behalf." *Marriott*, 437 F.3d at 1308. The Government has not said who invoked DPP, it has not shown that the head of the Department of Homeland Security, i.e., Secretary Kristi Noem, invoked DPP, and it has not produced any document showing that Secretary Noem "carefully undert[ook]" delegation of authority to invoke DPP in a manner approved of by the Federal Circuit in *Marriott*. *See id*. The Government has thus not met its burden, and this Court should hold that DPP does not apply to documents identified in Exhibit A and Exhibit B for this reason alone.[10]

### B.     The Government has not shown "actual personal consideration" by a person empowered to claim DPP.

The Government has not shown that the person whom delegated authority to invoke DPP gave "actual personal consideration" to each document withheld or redacted as "DPP." *Id*. The Government may not operate in secrecy, much less the two-fold secrecy it has applied in this case. Here, the Government has invoked DPP, yet it has withheld the details of that invocation so that Camel Energy is unable "to assess the claim." USCIT Rule 26(b)(5)(A). Moreover, the Government's description of these documents and reasons supporting its invocation of DPP in its privilege log are so general and vague as to be akin to not providing any description or explanation at all. *See generally,* Ex. A. The law does not permit the Government to assert privilege and withhold details about the assertion of that privilege. Accordingly, the Government has failed to

---

[10] Officer Bristol testified that he was not involved in the redactions. Transcript, at 145:20-22.

PUBLIC

properly invoke DPP, and this Court should hold that DPP does not apply to documents identified

in Exhibit A and Exhibit B.

> ### C.    The Government has not provided a detailed explanation of why the documents and redactions fall within the scope of the privilege.

By way of explaining its assertion of DPP, the Government claimed that each document

was redacted or [[████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████]] *See generally*,

Ex. A. The Government used the same explanation for every assertion of DPP, whether the alleged

privileged document was created before or after August 5, 2025. But August 5 is the most

important date here, and DPP does not apply to documents created after August 5. Here's why.

On December 2, 2025, shortly after issuing its Rule 34 Requests, Plaintiff's attorney

emailed a CBP Officer at the Port of Dallas concerning the exclusion of an entry that is not subject

to the present litigation and, at the time, was not subject to any litigation.[11] Ex. D. In response to

a question about why the Government had excluded Plaintiff's merchandise, the Dallas CBP

Officer stated he was "[utilizing guidance] for the immediate exclusion for specific batteries" and

attached a screenshot of the Guidance. *Id.*  After a lengthy back-and-forth, the Government finally

produced a copy of the "Guidance" marked as Bates No. GOV0000855 (contained in Ex. E). The

privilege log states [[████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████]] *See* Ex. A at 1. The Guidance reveals that, by

---

[11] Counsel for Plaintiff's email to the Dallas CBP Officer concerned Entry No. DSV-75955028. On December 2, 2025, Entry No. DSV-75955028 was not the subject of any litigation, but it became the subject of litigation on December 9, 2025. *See Camel Energy, Inc. v. United States et al.*, 25-420 (Ct. Int'l Trade, Kelly, J.).

PUBLIC

August 5, 2025, the government had decided how to manage Camel Energy's entries. Indeed, the CBP Officer's application of the "Guidance" to Camel Energy proves that it was in-force, and the Government had decided to exclude Camel Energy's merchandise. *See, e.g.*, Ex. D. In short, any communications post-August 5 are ***post***-decisional, *i.e*, not covered by DPP. *See U.S. Steel Corp*, 578 F. Supp. at 420 ("Post-decisional communications containing or explaining final agency policy and decisions are not considered deliberative and thus are not protected from disclosure.") (citing *NLRB*, 421 U.S. at 151–2); *Sealed Case*, 121 F.3d at 737 ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual[.]").

At his deposition, Officer Bristol confirmed that the document marked Bates No. GOV0000855 is the Government's decision on Camel Energy's detained entries. Transcript, 124:8-24. Indeed, Officer Bristol testified that the National Threat Assessment Center in league with the Forced Labor Division created the Guidance, which he called a "Job Aid," and used it to instruct CBP Officers to exclude Camel Energy's merchandise under the UFLPA. *See* Transcript at 126:12-14, 147:1-2 ("Q: Did you (Mr. Bristol) personally rely on this (referring to GOV0000855)? A: Yes."), 80:19-21 (("Q: Is that job aid (referring to GOV0000855) in this case also a directive to you at the Machinery Center? A: Yes."). Officer Bristol's testimony confirms that the Government concluded its deliberations on whether *and why* to exclude Camel Energy's merchandise on August 5, 2025; *ergo*, DPP does not protect communications and documents post-August 5. This demonstrates that the facts underlying that Guidance, the very facts the Government seeks to obfuscate with its overzealous redactions and assertions of privilege, are the crux of this case.

DPP does not protect documents and communications produced post-August 5 because they are not deliberative. "While documents may be pre-decisional and deliberative when

PUBLIC

originated, *they will not be entitled to any deliberative privilege if they are applied by the decisionmakers—as 'secret law'—or otherwise expressly adopted or incorporated by reference into the final decision*." *Meyer Corp*, 37 ITRD 2845 (emphasis added). Here, the Government applied the August 5 Guidance to Camel Energy as law. A CBP Officer stated he was "[utilizing Guidance] for the immediate exclusion for specific batteries" and attached a screenshot of GOV0000855. Ex. D. Officer Bristol also testified that he relied on that document. *See* Transcript 80:19-21 and 147:1-2. Simply, all documents or communications dated after August 5, and any documents dated before August 5 that are "expressly adopted or incorporated by reference into the final decision" are not DPP and should be produced. *Id*.

### D. Camel Energy has met its burden of proof to overcome DPP.

Even if this Court finds the Government properly asserted DPP, Camel Energy has met its burden to show that the court should reject application of DPP. DPP is a "*qualified* privilege." *Greenlight Organic*, 279 F. Supp. 3d at 1320 (emphasis added). Thus, even if the Government satisfies its burden, the Court must still "balance the competing interests of the parties involved, by weighing the importance of preserving confidentiality against the adversary's need for disclosure of the information." *Id*. When the Court balances the parties' competing interests, "[t]he party seeking disclosure must show (1) that its suit is 'non-frivolous and brought in good faith,' (2) that 'the information sought is [not] available through other discovery or from other sources,' and (3) that the information sought is 'importan[t]' to the party's case." *New York*, 607 F.3d at 945 (quoting *Friedman,* 738 F.2d at 1343) (citing *Marriott*, 437 F.3d at 1307).

### i. Camel Energy brought this suit in good faith, and it is not frivolous.

Camel Energy brought this suit in good faith, and it is not frivolous. The lawsuit challenges the Government's denial of Camel Energy's protests challenging CBP's decision to exclude two

PUBLIC

of Camel Energy's shipments form entry into the United States. *See* ECF 2, at 1. Suits like this one are common in this Court and Camel Energy properly pled its claims, hence why the Government did not move to dismiss the case and never challenged whether this case was brought in good faith or frivolous.

### ii.       Camel Energy cannot obtain the information anywhere else.

The information sought in Camel Energy's discovery is not available by other means. *See New York*, 607 F.3d at 945 (citing Friedman, 738 F.2d at 1343). The redacted documents are internal guidance, internal documents, and internal communications among various Government agencies, branches, and employees. Because the Government is the only entity with custody, control, or possession of documents identified in Exhibit A and Exhibit B, it is through discovery only that Camel Energy could obtain unredacted versions of the documents identified in Exhibit A and Exhibit B, and learn why its merchandise was excluded and protests denied, the very question at the heart of this litigation. The Government's assertion of DPP will permanently rob Camel Energy of the ability to see these facts and raises questions as to how the Government will even defend this case unless the Court grants this motion.

### iii.      The sought-after documents are key to this case.

The information in the documents redacted and/or withheld as identified in Exhibit A and Exhibit B are key to this case.[12] From the beginning, this case has been about, "Defendants' denial

---

[12] Plaintiff would also note that during the deposition, Officer Bristol revealed that NTAC had notified him of the "threat" regarding Camel Energy's products sometime between March to May 2025. Transcript, at 42:5-22. The Government produced one email from late May 2025 and withheld attachments that appear to be dated before May 2025 but did not produce any documents prior to that. While Plaintiff does not move to compel documents prior to May 2025 at this time, Plaintiff wishes to note for the Court that the Government's production may be deficient in this respect as well. Plaintiff reserves the right to move to compel those documents if it is discovered that the Government has improperly withheld them.

PUBLIC

of Plaintiff's protest challenging CBP's decision to exclude two of Plaintiff's shipments from entry into the United States under the Uyghur Forced Labor Prevention Act ("UFLPA") and 19 U.S.C. § 1307." ECF 2, at 1. As this Court knows, the Government may exclude merchandise from entry into the United States under the UFLPA if it was created using inputs from the XUAR or produced by an entity on the UFLPA Entity List. *See* 19 U.S.C. § 1307; UFLPA § 3(a). The Government admitted that Camel Energy is not on the UFLPA Entity List, *see* ECF 26 at 8, ¶52. As such, it is reasonable to conclude from this admission that this litigation was supposed to be about whether the merchandise was created using inputs from the XUAR.

However, only through sheer luck and the openness of one CBP Officer in the Port of Dallas did Plaintiff learn that there is guidance circulating *and applied* within CBP that treats Camel Energy as though it were an alter-ego of Camel Group, Ltd. (an entity on the UFLPA Entity List) and directing the "immediate exclusion" of Camel Energy's merchandise. *See* Ex. D and GOV0000855 (contained in Ex. E). In fact, and it bears repeating, the Government did not reference this Guidance in its responses to Plaintiff's Rule 34 Discovery Requests and, if it was not for Plaintiff specifically requesting this document and providing the screenshot, *it is not clear if the Government would have ever disclosed this critical document in discovery*.[13] Other evidence also suggests that this case is not about Camel Energy's supply-chain and the source of the raw materials it used to produce batteries. For example, in Bates No. GOV0001643-GOV0001647, the Government redacted the subject line of an email chain but failed to redact the subject line of the same email chain in GOV0001645- GOV0001646. *See* Ex. E. Thus, Camel Energy can see that the subject line was [[█████████████████████████████████████████████

---

[13] At his deposition, Officer Bristol still more relevant document that were missing from the Government's production and privilege log. Right now, the Government appears to be cooperating to turn produce those documents.

PUBLIC

██████████ ]]. *See* Ex. E. That the Government produced these documents as responsive and relevant to this case means that [[ ████████████████████████████████ ██████████ ]] and, more importantly, the facts underlying the issuance of the Guidance memo directing CBP to "immediately exclude" are relevant to why the Government excluded Camel Energy's merchandise. These actions imply that CBP has added Camel Energy to some secret UFLPA list directing automatic exclusion of its merchandise, which is completely outside the authority granted to CBP in the UFLPA. And if that's the case, then the Government's prior admission that Camel Energy is not on the UFLPA Entity List and that this case is about Camel Energy's supply chain is simply not true.[14]

This information is key to Camel Energy's case, because this now appears to be *the* reason the Government excluded its merchandise. If Camel Energy cannot obtain discovery on this issue, then it cannot effectively challenge the exclusion of its merchandise and denial of its protest. It is also unclear how the Government intends to defend this case and its denial without ever revealing these facts to Plaintiff's counsel or the Court. More importantly, if Plaintiff cannot obtain discovery on the facts supporting the Government's decision to exclude Camel Energy's merchandise, then it will never know whether the Government has any evidence wrongly tending to show that Camel Energy is the alter-ego of Camel Group or whether the decisions it made in the secret Guidance memo were based on truth. In other words, the Government will have excluded Camel Energy's merchandise on the (false) premise that Camel Energy is synonymous with Camel Group and successfully hid that fact behind DPP. The balance of interests plainly weighs in favor of forcing the Government to release unredacted versions of the documents withheld and redacted for DPP.

---

[14] Officer Bristol testified that no companies in Camel Energy's supply chain appear on the UFLPA Entity List and has no evidence that any inputs from XUAR. Transcript, at 110:1-16.

PUBLIC

Camel Energy asks that the Court conduct an *in camera* review of the documents and attachments identified in Exhibit A and Exhibit B, with particular focus on the documents marked Bates Nos. GOV0001561-1564, GOV0001565-1566, GOV0001619-1622, GOV0001632-1640, GOV0001220-1226, GOV0000874-877, GOV0001567-1571, GOV0001186, GOV0001729-1739, GOV0000855-857, and GOV0001677-1690 and their attachments, with an eye towards determining whether the Government redacted or withheld any facts supporting their decision to exclude Camel Energy's merchandise and, separately, whether the redactions actually redacted **pre**decisional deliberations.

## II.        Law Enforcement Privilege

The above analysis applies with equal force to the Government's assertion of LEP. LEP applies to slightly different (but overlapping) categories of information as DPP. The analysis, however, of whether LEP is properly asserted is identical here, for the reasons stated *Supra* Sections I.A, B., and C. The Government has not properly invoked LEP and for that reason alone the Court should direct them to produce unredacted versions of the documents and attachments identified in Exhibit A and Exhibit B.

Moreover, like DPP, LEP is a qualified privilege. See *Tri-State Hosp. Supply Corp. v. United States*, No. 00-cv-1463, 2005 WL 3447890, at *9 (D.D.C. Dec. 16, 2005) ("The law enforcement privilege, however, is qualified.") (citing *Sealed Case,* 856 F.2d at 272). Thus, even where the Government shows LEP applies, the Court must balance the Government's interest in keeping LEP out of the public eye against the interest of the party seeking discovery. Courts consider a wide array of factors in making this determination, to include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program

PUBLIC

improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. [*Id*.]

"Although listed last, the importance of the information sought to plaintiff's case [factor ten] is the most crucial and important factor." *Id*. All the above-listed factors weigh in favor of waiving LEP.

Factor one weighs in favor of releasing LEP-marked documents, if LEP even applies, because this case has a strong protective order and attorneys'-eyes-only designation in place. *See* ECF 31. Any document designated attorneys'-eyes-only by the Government enjoys that protection. Thus, the risk of exposure of law enforcement techniques and strategies is exceedingly low if not non-existent for attorneys'-eyes-only documents. It blinks reality for the Government to argue that disclosure of documents under an attorneys'-eyes-only designation to three attorneys bound by a comprehensive protective order would "thwart governmental processes." *Id*.

The second factor also favors waiving LEP because Camel Energy's attorneys are specifically not seeking any identifying information of any confidential informant. *See* Transcript at 171-172:23-25, 1-4 [[█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████]]. In Mr. Bristol's deposition, he admitted that the Guidance and decision to exclude Plaintiff's merchandise was a result of anonymous allegations against Camel Energy by "US/China based employees." Ex. D; GOV0000855 (contained in Ex. E); Transcript, at 93:17-21 ("Mr. Bristol: As I mentioned before, we have allegations that we relied

on. Plaintiff's Counsel: That these batteries were manufactured in [XUAR]? Mr. Bristol: Yes.").
Camel Energy does not want and has never asked for the name or identifying information of any
confidential informant who made these allegations and is only seeking the facts of the allegations
relevant to the Government's decision to exclude Plaintiff's merchandise, which are the facts
underlying the Guidance and this case. *See* Transcript at 171:23-25,172:1-4.[15] Here, however, the
Government has used that LEP excuse to redact hundreds of pages of documents and prevent Mr.
Bristol from testifying as to the facts of the allegations against Camel Energy. Camel Energy is
confident that after an *in camera* review the Court will find most documents or pieces of documents
would not tend to reveal the identity of any confidential informant. Note too that the Government's
privilege log redacted documents containing Personally Identifiable Information as such ("PII").
*See e.g.*, Exhibit A at 3-4 (REL0000000028_0002), 5-6 (REL0000000030_0004), 7
(REL0000000033_0002), 9 (REL0000000034_0005), 9-10 (REL0000000035_0001), 17
(REL0000000085), 21-22 (REL0000000127_0002), and 23-24 (REL0000000151 and
REL0000000152). Presumably, the PII designation protects identifying information of an
informant. If so, it logically follows that the Government's extensive assertion of LEP and DPP
redactions are not necessary to maintain the anonymity of an informant.

It is unclear whether the third factor applies in this case, but factor four plainly applies and
heavily favors Camel Energy. Camel Energy seeks the factual data underlying the Government's
decision to exclude its merchandise. *See e.g.,* Transcript, 48:3-7 ("Plaintiff's Counsel: I'm asking

[15] It is also noteworthy that Government counsel attempted to prohibit Mr. Bristol from testifying
on the simple question of whether anyone at CBP or in the Government actually investigated and
confirmed the veracity of the allegations against Camel Energy that led to this secret Guidance
memo. Finally, the Government allowed Mr. Bristol to testify that the Machinery Center did not
investigate those allegations, and he does not know if any other agency did. *See* Transcript, 95:3-
23, 98:1-10.

PUBLIC

for the factual reasons. It's not good enough just to say you may have violated a statute. That's a very broad statute. So, I want to know the reasons.") To date, the Government has provided a legal conclusion that the UFLPA applies to Camel Energy's merchandise, but it has refused to explain or support that conclusion with any fact, and it has refused to produce documents with the underlying facts, if any. Under factor four, the Government's decision to withhold the facts weighs heavily in favor of waiving LEP.

It is not clear if factors five, six, or seven apply to this case, but to the extent they do the attorneys'-eyes-only designation and protective order in this case should ameliorate any concern raised by those three factors. Production of documents in that fashion will not hamper any ongoing law-enforcement activity to the extent there is one. Besides, the Government's investigation appears to have concluded—they have already excluded the goods and denied Camel Energy's protest.

Under factor eight, Camel Energy's suit is plainly not frivolous. Indeed, the Government did not even attempt to move to dismiss the case or argue that the case was not brought in good faith or frivolous. Camel Energy's suit is a straightforward challenge to a denial of their protest of exclusion under 28 U.S.C. 1581(a). Simply, this case is meritorious, and this Court should not allow the Government to withhold documents and facts that are key to resolution of this case.

Last, factor nine and factor ten, the key factor, weigh heavily in favor of waiving LEP, assuming it even applies. The information the Government is withholding is the *key* information in this case. The Government has taken a legal position that the UFLPA excludes Camel Energy's merchandise and has issued secret Guidance and UFLPA list enforcing that position. *See* Ex. D and Ex. E.  Facts must support that legal position and that Guidance. Yet the Government has hidden those facts even when directly asked about them. *See* Transcript, 49:10-16 and pp. 49-51.

25

PUBLIC

Indeed, the Government redacted the facts from its production of documents and refused to allow Officer Bristol, the only witness named in the Government's initial disclosures, to testify about them. But Camel Energy cannot get the facts on which the Government relied (if any) from anyone but the Government. Thus, factor nine supports disclosure of the information. Moreover, how can Camel Energy or the Court evaluate the propriety of the Government's decision to exclude if it cannot examine the facts underlying that decision? It cannot be true that the facts supporting the Government's legal action are privileged because by so claiming the Government will have effectively insulated its decision from this Court's review—28 U.S.C. § 1581(a) will be a nullity. For that reason, factor ten weighs heavily in favor of granting this motion to compel.

Lastly, the Government will undoubtedly cite case law discussing the "strong presumption against lifting the [law enforcement] privilege" once shown to apply. *New York*, 607 F.3d at 944. That there is case law creating a presumption against lackadaisically lifting LEP is plain. But just as adamantly supported by case law is the fact the privilege can and should be waived where a balance of factors so requires. *See e.g., Tri-State Hosp. Supply Corp. v. United States*, No. 00-1463, 2005 WL 3447890 (D.D.C. Dec. 16, 2005); *Harrison v. City of New York*, No. 22-CV-04169, 2025 WL 3204962 (E.D.N.Y. Nov. 17, 2025); *Fonville v. D.C.*, 230 F.R.D. 38 (D.D.C. 2005); *Tuite v. Henry*, 98 F.3d 1411, 1418 (D.C. Cir. 1996). This Court should reject the Government's invitation to hamstring its own authority to review the Government's application of the UFLPA, and should hold, based on the law, common sense, and an *in camera* review, that Camel Energy is entitled to unredacted and withheld documents that show the facts on which the Government relied.

### III.       Recalling Officer Bristol

Officer Bristol was deposed on January 20, 2026, from 10am-5pm, which consisted of approximately 5 hours of actual questioning and another approximately 2 hours of lunch breaks

PUBLIC

and off-the-record discussions. Throughout the questioning, the Government's over-assertion of LEP and DPP to the documents, and their assertions of LEP and DPP at Officer Bristol's deposition hampered plaintiff's ability to depose Officer Bristol. For example, Plaintiff's counsel asked Officer Bristol why the goods were detained but opposing counsel would not let him answer, instead objecting to the question and only allowing Officer Bristol to state vaguely that "there were threats of UFLPA violations". Transcript, at 49:10-18. However, the Government would not even allow Officer Bristol to identify what part of the UFLPA has been violated or any facts about the alleged violations. Transcript, at 50:10-25, 51:1. Indeed, the Government would not even let Officer Bristol testify as to his understanding of the facts underlying the Government's decision to exclude Camel Energy's merchandise. *See id*.; *see also* Transcript at 46:12-16 ("Plaintiff's Counsel: Are you going to allow him to testify as to what the allegations are that resulted in the detentions of these goods? Government Counsel: No.").

Under USCIT Rule 30(d), "[t]he court *must* allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination" (emphasis added). Camel Energy's examination of Officer Bristol was impeded at every turn by the Government's assertion of LEP and DPP both to the documents and to prevent Officer Bristol from answering questions. *See e.g.*, Transcript at 46:12-16, 49:10-16, and pp. 46-49 (instructing Officer Bristol not to answer why the goods were excluded); Transcript, at 66:11-18, and pp. 93-97 (instructing Officer Bristol not to answer whether the allegations against Camel were verified), and Transcript, at pp. 134-137 (instructing Officer Bristol not to answer whether he has found evidence that any of Camel Energy's merchandise is manufactured in XUAR). Camel Energy did not have a chance to "fairly examine" Officer Bristol on the Government documents stamped Bates Nos. GOV0001561-1564,

PUBLIC

GOV0001565-1566,      GOV0001619-1622,      GOV0001632-1640,      GOV0001220-1226,

GOV0000874-877, GOV0001567-1571, GOV0001186, GOV0001729-1739, GOV0000855-857,

and GOV0001677-1690. Even setting the documents aside, the Government would not allow

Officer Bristol to testify based on his independent memory on many subjects—most notably, the

Government would not let Officer Bristol testify about the facts on which the Government relied

to make its legal conclusion that Camel Energy's merchandise should be excluded from entry. *See*

*e.g.*, Transcript at 46:12-16, 49:10-16, and pp. 46-49. Thus, under USCIT Rule 30(d), "[t]he court

must allow additional time" for Camel Energy to depose Officer Bristol. Camel Energy

respectfully requests that the Court order the Government to produce Officer Bristol for a

deposition that is four (4) hours in length.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests the Court: (1) grant Plaintiff's motion

to compel; (2) direct the Government to produce versions of documents and attachments identified

by Bates or Control number in Exhibit A and Exhibit B that are unredacted except for redactions

that are narrowly tailored to protect disclosure of the identity of any informant no later than 3 days

after entry of this Court's order, and further that the Court oversee the redaction of the

Government's documents and attachments identified by Bates or Control number in Exhibit A and

Exhibit B through *in camera* review; (3) direct the Government to produce Officer Bristol for a

second deposition that is four hours in length; (4) direct Defendants to pay, pursuant to USCIT

Rule 37(a)(4), Plaintiff's reasonable expenses incurred in making this motion, to include attorneys'

fees; and (5) direct Plaintiff to submit a bill of its reasonable expenses incurred in making this

motion, to include attorneys' fees, within 14 days of entry of the Order and for Defendants to

respond, if they wish to, in the time prescribed by the USCIT Rules.

PUBLIC

**DATED:** January 29, 2026                    Respectfully Submitted,

                                        _s/ Mark V. Heusel_
                                        Mark V. Heusel
                                        Jacob L. Clark
                                        Daniel C. Ziegler
                                        DICKINSON WRIGHT PLLC
                                        350 S. Main Street, Suite 300
                                        Ann Arbor, MI 48104
                                        (734) 623-1908
                                        mheusel@dickinsonwright.com
                                        jlclark@dickinsonwright.com
                                        dziegler@dickinson-wright.com
                                        _Attorneys for Plaintiff Camel Energy, Inc._

PUBLIC

## IN THE UNITED STATES
## COURT OF INTERNATIONAL TRADE

CAMEL ENERGY, INC.,

           Plaintiff,

   v.

UNITED STATES OF AMERICA and
UNITED STATES CUSTOMS AND
BORDER PROTECTION,

           Defendants.

Case No.: 25-00230

Before: Claire R. Kelly, Judge

---

### [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

After consideration of Plaintiff's Motion to Compel, Defendants' response thereto, and all other facts, the Court **GRANTS** Plaintiff's Motion to Compel.

The Court **FURTHER ORDERS** that the Government must produce, no later than 3 days after entry of this order, versions of documents and attachments identified in Exhibit B to Plaintiff's Motion to Compel and in the Government's privilege log, which is attached as Exhibit A to Plaintiff's Motion to Compel, that are unredacted except for redactions narrowly tailored to protect disclosure of the identity of any informant.

The Court **FURTHER ORDERS** that before producing unredacted versions of the documents and attachments identified in Exhibit B to Plaintiff's Motion to Compel and in the Government's privilege log, which is attached as Exhibit A to Plaintiff's Motion to Compel, the Government must submit any redacted documents and an unredacted version thereof to the Court, under seal, for *in camera* review.

The Court **FURTHER ORDERS** the Government to produce Officer Bristol for a second deposition that is four hours in length no later than February 25, 2026.

PUBLIC

The Court **FURTHER ORDERS** Defendants to pay, pursuant to USCIT Rule 37(a)(4), Plaintiff's reasonable expenses incurred in making this motion, to include attorneys' fees.

The Court **FURTHER ORDERS** that Plaintiff must submit a bill of reasonable expenses incurred in making this motion, to include attorneys' fees, within 14 days of entry of the Order and for Defendants to respond, if they wish to, in the time prescribed by the USCIT Rules.

**SO ORDERED.** This is not a final order and does not dispose of this case.

Dated: _____                    _____

                                                           Hon. Claire R. Kelly

PUBLIC

# IN THE UNITED STATES
# COURT OF INTERNATIONAL TRADE

CAMEL ENERGY, INC.,

            Plaintiff,

    v.

UNITED STATES OF AMERICA and
UNITED STATES CUSTOMS AND
BORDER PROTECTION,

            Defendants.

Before: Claire R. Kelly, Judge

Case No.: 25-00230

---

### CERTIFICATE OF SERVICE FOR PLAINTIFF'S MOTION TO COMPEL

I hereby certify that on January 29, 2026, a true copy of Camel Energy Inc.'s Motion to Compel in Case No. 25-00230, *Camel Energy Inc., v. United States, et al.*, was served via CM/ECF and by email on all attorneys of record to the below emails:

Monica Triana: monica.p.triana@usdoj.gov

Mathias Rabinovitch: mathias.rabinovitch@usdoj.gov

Michael Anderson: michael.a.anderson@cbp.dhs.gov

Dated:  January 29, 2026

                                    */s/ Jacob L. Clark*
                                    Jacob L. Clark
                                    DICKINSON WRIGHT PLLC
                                    350 S. Main Street, Suite 300
                                    Ann Arbor, MI 48104
                                    (734) 623-1624
                                    jlclark@dickinsonwright.com
                                    *Attorney for Plaintiff Camel Energy, Inc.*

4919-0671-6043 v1 [71891-126]