IN THE UNITED STATES
COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAMEL ENERGY, INC., | Case No.: 25-00230 |
| Plaintiff, | |
| v. | Hon. Claire R. Kelly |
| UNITED STATES OF AMERICA and UNITED STATES CUSTOMS AND BORDER PROTECTION, | |
| Defendants. | |

## CAMEL ENERGY, INC.'S STATUS REPORT

Plaintiff Camel Energy, Inc. ("Camel Energy" or "Plaintiff") hereby provides this status report in response to the Defendants' United States of America and U.S. Customs and Border Protection ("CBP") (collectively, "Government" or "Defendants"), status report and notice that it intends to release the merchandise subject to this litigation (ECF 37).

On October 24, 2025, Plaintiff filed its complaint challenging the exclusion of its merchandise in Entry Nos. 906-0496368-9 and 906-0496402-6. Compl., at ¶ 1, ECF 2 (Oct. 24, 2025). CBP excluded the merchandise as being subject to the Uyghur Forced Labor Prevention Act ("UFLPA"), Pub. L. 117-78, 135 Stat. 1525 (2021). Plaintiff requested relief of, *inter alia*, a declaration that its goods were not subject to the UFLPA, release and entry of the merchandise and any other relief deemed just and proper. ECF No. 2, at pp. 11-12.[1]

---

[1] Plaintiff also seeks similar relief in its sister case, *Camel Energy, Inc. v. United States, et. al.*, Case No. 25-420 also pending before this Court and Judge Kelly. It is also worth noting here that the Government does not address how it can release entries subject to Case No. 25-420 given the Court's present order requiring CBP to not disturb the status quo of said entries. *See Camel Energy, Inc. v. United States, et. al*, Case No. 25-420, Order on Motion for Temporary Relief, ECF 21 (Dec. 24, 2025).

1

At the time Plaintiff requested its relief, it believed this would be a straightforward Section 1581(a) denial case. During the discovery process, however, it came to light that CBP was relying on a secret memo it called a "job aid" that instructed all ports to "immediately exclude" certain Camel Energy merchandise. *See* Pltf.'s Mot. to Compel, Ex. D - 12/2/25 Email with Officer Markiewicz and Screenshot of Guidance, ECF 34-4 and 35-4 (Jan. 29, 2026). The "job aid" also included an unsubstantiated allegation that employees related to Plaintiff had apparently reported that Camel Group, Inc. (the ultimate parent of Plaintiff) was importing goods into the U.S. under various aliases. Interestingly, however, Plaintiff was not specifically named in the "job aid" as one of those companies. Notwithstanding this fact, the Government's witness admitted that the job aid was the reason all of Plaintiff's goods were being detained and excluded from entry into the U.S. *See* Pltf.'s Mot. to Compel, Ex. C - Jan. 20, 2026 Officer John Bristol Deposition Transcript, at 80:19-21 and 147:1-2, ECF 34-3 and 35-3 (Jan. 29, 2026). This completely contradicted the initial CBP narrative that this was a simple UFLPA supply chain review and instead made the focal point of this case about the job aid itself. The secrecy surrounding this job aid and the lengths the Government has gone to keep the facts behind its genesis, its application, and whether it remains in effect today has been extraordinary and is subject to Plaintiff's Motion to Compel (ECF 34 and 35) currently pending with the Court.

On January 30, 2026, CBP issued its decision through Office John Bristol that "there is no link to use of forced labor in the supply chain" for Camel Energy's entries and instructed Ports to release all detained entries "NOT covered by [the] CIT litigation." CBP has begun releasing Camel Energy's entries but has not released them all. However, simple release and dismissal do not adequately address the harm suffered by Camel Energy for two reasons.

*First*, Camel Energy has suffered significant reputational harm as a result of CBP's actions and allegations. While CBP now acknowledges, after previously failing to respond to Plaintiff's UFLPA responses and after months of litigation, that Camel's goods are not subject to the UFLPA, the release of the goods, without any accompanying declaration or judgment directly stating that Camel Energy's supply chain for this merchandise is free of forced labor, does nothing to address that reputational harm.

*Second, and most importantly,* because of the discovery of the job aid, release of Plaintiff's merchandise will do nothing to address the very real concern that the job aid remains effective and could still be used against Plaintiff in the future. This fear is more real considering that during the course of this litigation, CBP already attempted to recall entries it had released earlier this year based on the "job aid." So long as the Government refuses to address the facts and use surrounding the "job aid," it is not unreasonable to expect that this type of action may continue without opportunity for recourse. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."); *see also Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (holding that if "cases are capable of repetition, yet evading review" they are not moot). In addition, the "job aid" refers to other affiliated entities of Plaintiff who could be impacted by reference to this directive to the Ports. Therefore, as long as this "job aid" exists, Plaintiff's, and its affiliates', merchandise, with this same supply chain, will be at risk for immediate exclusion.

On February 6, 2026, Defendants filed a status report stating "CBP intends to release the merchandise that is the subject of this action into the commerce of the United States." ECF 37, at p. 1. The status report, however, contradicted Officer Bristol's admission that Camel Energy's

entries were detained "for UFLPA review" and that he considers his review to be a UFLPA applicability review of the supply chain for these goods based on documentation and applicability packages submitted by Plaintiff along with supplemental information and explanations. The Government's status report has wrongly characterized CBP's conclusions that Camel Energy had sufficiently met its burden. Camel Energy's burden would only arise, however, *after* a determination of UFLPA applicability. It is thus unclear whether (A) the Government believes the UFLPA applies to Camel Energy's supply chain but that *in this specific circumstance for these specific entries of merchandise* Camel Energy satisfactorily proved no link to forced labor, or (B) whether the Government has determined that the UFLPA does not apply to Camel Energy's supply chain because there is no link to forced labor. The distinction matters, because it will control future interactions between Camel Energy and the Government. If the former, Camel Energy can expect more detentions, more exclusions, and more lawsuits; if the latter, Camel Energy can proceed with reasonable confidence that it has cleared its name and current supply chain for these goods.

      The above confusion is why Camel Energy did not seek just an order "direct[ing] Defendants to allow the merchandise in Entry Nos. 90604963689 and 90604964026 to enter the United States[.]" ECF 2, at pp. 11-12. To be sure, Camel Energy sought release of its goods. But it also—and perhaps more importantly—sought a "declar[ation] that Entry Nos. 90604963689 and 90604964026 are not subject to the UFLPA," i.e., that the supply chain of Entry Nos. 90604963689 and 90604964026 are free of forced labor. *Id*. Camel Energy also sought an "award [of] any other relief this Court deems just and proper" as a catch-all to cover the unexpected.[2]

---

[2] As more fully explained in Camel Energy's Motion to Compel (ECF 34 and 35), the unexpected arose. Camel Energy now credibly believes that it was added to, for lack of a better phrase, a "secret UFLPA Entity List" in which it was blacklisted from bringing goods into the United States. Because of the Government's heavy redactions and refusal to allow its witness to testify to what evidence the CBP and Forced Labor Division relied on to order an immediate exclusion of Camel's

4

In an attempt to address Plaintiff's concerns, head off the possibility that it may continue to have goods excluded, and find a mutually agreeable resolution to this matter, Plaintiff's counsel sent a letter to the Government's counsel on Monday, February 9, 2026 outlining its requirements for an appropriate consent judgment and order to bring this matter to an end.  However, *not even 1 hour later,* the Government's counsel responded without addressing Plaintiff's offer and instead stating its intention to file a motion to dismiss.  Unless a full resolution addressing the concerns raised by Plaintiff is achieved, Plaintiff intends to exercise its legal right to continue prosecuting this matter.

The Government clearly has no intention of addressing the job aid that now makes up the core of this litigation and causes very real concern for the Plaintiff that it could simply wind up right back in court fighting the same fight.  Instead, the Government intends to release the goods, avoid any responsibility for its actions, and place Camel Energy and the Court right back at square one.  As such, Plaintiff supports the Court's recent request to convene a status conference call on Wednesday, February 11, 2026, and looks forward to discussing an appropriate resolution to this matter that addresses all of Camel Energy's damages as well as whether the Government intends to address the "job aid."

---

goods, Camel cannot be certain of the actual allegations that supported the job aid. . There is enough in the record to know, however, that this case involves *something* more than the typical detention-review-release process with which this Court is familiar.

                                                        Respectfully submitted,

                                                        */s/ Mark V. Heusel*
                                                        Mark V. Heusel
                                                        Jacob L. Clark
                                                        Daniel C. Ziegler
                                                        DICKINSON WRIGHT PLLC
                                                        350 S. Main Street, Suite 300
                                                        Ann Arbor, MI 48104
                                                        (734) 623-1908
                                                        mheusel@dickinsonwright.com
                                                        jlclark@dickinsonwright.com
                                                        dziegler@dickinson-wright.com
**DATE:**  February 10, 2026             *Attorneys for Plaintiff Camel Energy, Inc.*